H. TIM HOFFMAN, SBN 49141
ARTHUR W. LAZEAR, SBN 83603
MORGAN M. MACK SBN 212659
HOFFMAN & LAZEAR
180 Grand Avenue, Suite 1550
Oakland, CA 94612
Telephone: (510) 763-5700

CHRISTIAN HARTLEY
DANIEL M. BRADLEY
RICHARDSON, PATRICK,
WESTBROOK & BRICKMAN, LLC
174 E. Bay Street
Charleston, SC  29401
Telephone: (843) 727-6564

THOMAS F. CAMPBELL
CAMPBELL LAW
A PROFESSIONAL CORPORATION
100 Concourse Parkway, Suite 115
Birmingham, AL  35244
Telephone: (205) 278-6650

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

RONALD KRZYZANOWSKY AND
ILEANA KRYZANOWSKY on behalf of
themselves and all others similarly situated,

                Plaintiffs,

       vs.

ORKIN EXTERMINATING COMPANY,
INC.; ROLLINS, INC.

             Defendants,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: C07-05362-JLL

**POINTS AND AUTHORITIES IN
SUPPORT OF PLAINTIFFS' MOTION
TO COMPEL**

# Background

The Plaintiffs have conferred with Defendants' counsel on issues in this dispute, by e-mail, in person, and over the telephone and the parties were unable to come to an agreement. Though a few compromises regarding the scope of various requests were reached, there are still several outstanding issues where no agreement could be reached.  One area of dispute is the information required to be disclosed as part of the Rule 26(a) Initial Disclosures.  Additionally, many of the disagreements turn on establishing an effective date range. During the discussions of these matters, plaintiff has taken the position the responses to requests should encompass the time period proposed by the plaintiffs as defining the appropriate class period since Plaintiffs are masters of the Complaint. Defendants argue that an appropriate range would be January 1, 1999 through the filing of the case.  Plaintiff believe that October 1, 1987 through the filing of the case is relevant time period as it includes the entire class period and does not artificially limit it. This date is important as it marks a significant change in the methods used to prevent subterranean termite infestation employed by Defendants as a result of regulatory changes that banned the use of effective and error-forgiving chlordane containing products.  This time is when schemes alleged began in force and Orkin's focus shifted further from protection of customer properties to shielding it from liability from snowballing claims.  *See e.g*., *Orkin v Federal Trade Comm'n,* 849 F.2d 1354 (11th Cir. 1988) (Orkin & Rollins plan and internal studies to secretly change or ignore lifetime customer contract terms so that Orkin could increase fixed, lifetime renewal fees). The Class definition proposed by Plaintiffs includes any current customers that entered into subterranean termite service agreements since this monumental change in industry practice who were all subject to the same ongoing schemes as the representatives.  Orkin has standard policies nationwide.

Additionally, despite the Court stating it would NOT bifurcate discovery as Orkin wished and that Plaintiffs could file their motion for class certification "when ready."  ALL of Orkin's responses herein are aimed at finessing narrow discovery just to the plaintiffs and not to class

1   issues even though Defendants lost this argument when they presented it during the initial

2   scheduling conference.  Rules governing discovery are broad and to be liberally construed.  *See*

3   *Bible v. Rio Props., Inc.*, 246 F.R.D. 614, 617 (C.D. Cal. 2007) Rule 26(b)(1) permits discovery

4   in civil actions of "any matter, not privileged, that is relevant to the claim or defense of any

5   party. . . ." Fed. R. Civ. P. 26(b)(1). "Generally, the purpose of discovery is to remove surprise

6   from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their

7   dispute." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 635 (C.D. Cal. 2005)(quoting *Oakes v.*

8   *Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998)). "Toward this end, Rule 26(b) is

9   liberally interpreted to permit wide-ranging discovery of information even though the

10  information may not be admissible at the trial." *Id.* (citing *Jones v. Commander, Kansas Army*

11  *Ammunitions Plant*, 147 F.R.D. 248, 250 (D. Kan. 1993)). All discovery, and federal litigation

12  generally, is subject to Rule 1, which directs that the rules "shall be construed and administered

13  to secure the just, speedy, and inexpensive determination of every action." *Bible*, 246 F.R.D. at

14  617 (C.D. Cal. 2007)(quoting Fed. R. Civ. P. 1).

15

16                                   **Nature of the Case**

17          This putative class action arises out of the pattern and practice by Defendants of failing to

18  provide the subterranean termite prevention and control services they are required by statute,

19  labels, good entomologic practice and contracts to provide; collection of fees for installation and

20  maintenance of chemical barriers without fully applying or maintaining the barrier; collection of

21  fees for periodic inspections without conducting the inspections or conducting the inspections in

22  such a deficient manner that it fails to satisfy the purpose of the periodic inspection; placing

23  properties under a contract to prevent termite infestation when Defendants know that the manner

24  of construction will prevent effective fulfillment of the purpose of prevention services; illegally

25  raising annual renewal fees *(See Orkin v Federal Trade Comm'n, Id.)*; and of suppressing this

26  information to generate income without providing services.  Essentially the case involves selling

27  termite protection Orkin never intends to provide.

28

        POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL

                                           3

Plaintiffs allege violations of the California Consumer Legal Remedies Act, California Civil Code §§1750 – 1784, breach of express and implied contracts, professional negligence, violation of California statutes and regulations applicable to Defendants as licensed Structural Pest Control Operators, and violations of the UCL.

Plaintiffs entered into a termite-prevention contract with Orkin. As set forth more fully in the Complaint, Orkin engages in widespread unfair, unlawful and deceptive practices (and breaches of duties imposed by contracts, law or industry standards) with regard to how it promotes, sells, and services obligations under Plaintiffs,' and all similarly-situated consumers' contracts dealing with prevention of subterranean (ground) termites.

Orkin used chemicals which were known to be ineffective even if properly applied and/or which Orkin knew wore off over time, but nonetheless promised "lifetime" protection or annually renewed promises of protection where none existed or it had worn off. Orkin failed to complete or replace chemical barriers and ineffective "bait" systems, kept customers in the dark about this failure, and covered up or compounded the wrongdoing by switching these customers to different contracts, and/or provided spot treatments which it said were "complete" treatments.

Orkin either continued to collect annual renewal premiums for its guarantees or switched customers to new contracts for installation of control systems falsely and deceptively described as "baits" that would kill all termite colonies. The system Orkin described as a "baiting system" could not fairly or accurately be considered a lure for termites.  When contract switches occurred from liquid chemical to "bait," customers paid for alleged protection Orkin already owed them for free under liquid chemical contracts already paid for.

Orkin failed to inspect properties with the frequency, regularity and/or thoroughness that it knew to be required by sound entomologic practices (and even its own policies) without disclosing to customers that its non-existent or incomplete, and/or inadequate inspections failed to include a quality control program and were not designed to identify problems with the completeness and/or efficacy of chemical barriers or control methodologies.

 Rollins controlled and directed the aforementioned conduct and omissions of Orkin.

POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL

Company-wide internal audits showed massive failure to provide the protections paid for.  Orkin has been sued by many governments and many customers and those allegations always prove factually true.  Yet Orkin continues its schemes.

**ARGUMENT**

The purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute.  *Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.,* 175 F.R.D. 646, 650 (C.D. Cal. 1997). Rule 26(b) is "liberally interpreted to permit wide-ranging discovery" of all information regarding any matter, not privileged, that is relevant to the claim or defense of any party, and that appears reasonably calculated to lead to the discovery of admissible evidence. *Id.; see also* Fed. R. Civ. P. 26(b)(1). The party upon whom discovery requests are served has an obligation to respond. *See, e.g.,* Fed. R. Civ. P. 33(b) and 34(b). The party resisting discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining and supporting its objections. *Id.*

If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions Rule 37(2)(A). Pretrial discovery is a "broad regime" See *O2 Micro International v. Monolithic Power Systems.*, 467 F3d 1355, 1366 (5th Cir 2006). Rule 26(b), Federal Rules of Civil Procedure, authorizes discovery of information "relevant to the claim or defense of any party."

**1. Scope of Plaintiffs' Discovery Requests.**

Any party may obtain discovery within scope fixed by Rule 26 (b)(l) regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause the court may order discovery of any matter relevant to the subject matter

involved in the action. Relevant information need not to be admissible at the trial if the discovery appears reasonable calculated to lead to the discovery of admissible evidence. Rule 33 (c) Interrogatories may relate to any matters which can be inquired into under Rule 26(b)(1), and the answers may be used to the extent permitted by the rules of evidence. Rule 34(a) Production of Documents provide in part "to inspect and copy, test, or sample any tangible things which constitute or contain matters with in the scope of Rule26(b) and which are in the possession, custody or control of the party upon whom the request is served". Plaintiffs seek additional information as to Defendants Corporate structure, officers, management, operations, its compensation structure, sales materials, use of chemical products, pricing of services, claims handling and other related matters, all reasonably and painstakingly calculated and crafted to lead to the discovery of evidence relevant to and admissible for proof of the Complaint's allegations.  Plaintiffs' counsel has specialized in termite litigation, including that involving Orkin, for over a decade.  *See* www.campbelllitigation.com.

### 2. Burden is on Defendant to Demonstrate the Validity of Their Objections.

There is no requirement of a showing of good cause for serving interrogatories. When an objection to a discovery request is made, the party raising objections bears the burden of showing that the objection is valid (*Coy v. Superior Court of Contra Costa County,*  58 Cal.2d. 210, 220-221, 373 P2d 457 (1962)).

### 3. The Subject Matter Of The Discovery Request Are Permissible.

Plaintiffs is entitle to identify and confirm those individuals/parties who were responsible for shortage of products to his shops and losses of his investments which give rise to present complaint against the cross-defendants.

Further, Plaintiffs are entitled to obtain discovery as to the contents of Defendants business operations. The materials undoubtedly contains information relating to Defendants knowledge of its shortcomings in providing the agreed to services.  The requested information

may also reveal additional information on Defendants' deceptive practice in the sales of services. Additionally, the requested information will show the company wide compensation system that encouraged these deceptive practices.

Plaintiffs are further entitled to the information sought through the form interrogatories served on Defendants. An interrogatory may relate to whether another party is making a certain contention, or to the facts, witnesses and writings on which a contention is based.

## SPECIFIC INTERROGATORIES AND REQUESTS, RESPONSES AND OBJECTIONS, AND REASONING WHY ANSWERS NEED TO BE PROVIDED AND MATERIALS SHOULD BE PRODUCED

### Discussion and Position on Interrogatory 1

Interrogatory No. 1: During the RELEVANT TIME PERIOD, IDENTIFY each person or entity who purchased, received, was transferred, assumed, novated, or otherwise obtained rights under any WDO SERVICES contract with DEFENDANTS in California which was annually renewable or renewable on some other periodic basis.

Response to Interrogatory No. 1: Defendants object to this interrogatory because it is overly broad and calls for the production of irrelevant information that is not likely to lead to the discovery of admissible evidence. Among other reasons, the information sought is completely irrelevant to the named Plaintiffs' individual claims or to the issue of whether class certification is appropriate. Prior to class certification the facts and circumstances surrounding the merits of each individual putative class member's claims are irrelevant to any of the elements of Rule 23 and whether a class should be certified. *See Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 177 (1974); *see also Hanon v. Dataproducts Corp.,* 976 F.2d 497, 509 (9th Cir. 1992). Moreover, the request is burdensome because it would require a file-by-file review of over ten thousand files; Orkin does not have computerized records sufficient to identify every person listed in the

interrogatory for the entire RELEVANT TIME PERIOD. Subject to and without waiving the foregoing and General Objections, Defendants state they will supplement this interrogatory response to provide the number of active subterranean termite contracts for customers in California between October 2003 and the date of filing of Plaintiffs' Complaint.

**Defendants' Further Response After the Meet and Confer to No. 1:** Plaintiffs have requested a sampling of Orkin files and have proposed a protocol for identifying such a sample. Without expressing a view at this time as to the propriety of such sampling protocol, Orkin would agree to adhere to the following protocol requested by plaintiffs' counsel during the meet and confer process: Orkin will randomly select, using a randomization program selected or approved by plaintiffs, one claim that arose in the first quarter of each year between January 1, 1999 and June 1, 2008 in northern California and one claim that arose in the third quarter of each year between January 1, 1999 and June 1, 2008 in southern California. (Plaintiffs have not yet proposed a protocol for Arkansas). As used in this paragraph, a "claim" means a claim for property damage based on a contract entered into between Orkin and a residential customer for the treatment of subterranean termites. Once the claim has been identified using this protocol, Orkin would produce a copy of the paper file maintained in the branch, a paper claims file, if any, and any records maintained in FOCUS or OSCAR relating to the treatment at issue or the claim (Doc. Req. 1).

List of customer identification numbers for residential subterranean termite customers in Arkansas and California who had contracts with Orkin for residential subterranean termite treatment services, which were entered into between January 1, 1999 and June 1, 2008 to the extent that such numbers are reasonably retrievable based on Orkin's computer records (Interr. 1).

**Plaintiffs' Position and Grounds to Compel on Interrogatory 1:** The disagreement on the appropriate response to Interrogatory no. 1 turns on the effective date range. Plaintiffs believe that the relevant time period begins on October 1, 1987 to comport with the proposed class period. This date is important as it marks a significant change in the methods used to

prevent subterranean termite infestation employed by Defendants as a result of regulatory changes that banned the use of chlordane containing products. This is discussed in the Introduction above. The Class definition proposed by Plaintiffs includes any current customers that entered into a subterranean termite service agreements since this monumental change in industry practice.

Further, this information is relevant as it is needed to determine the size of the potential class. This information is also essential in calculating damages.

**Discussion and Position on Interrogatory 2**

Interrogatory No. 2: IDENTIFY all customers of DEFENDANTS during the RELEVANT TIME PERIOD who fit the class definition in the COMPLAINT and who have already commenced an individual civil action or action in arbitration against any DEFENDANT relating to the subject matter of this litigation.

Response to Interrogatory No. 2: Defendants object to this interrogatory because it seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Among other reasons, this request seeks information regarding disputes that have been settled and, therefore, the plaintiffs in such actions are not members of the putative class; in addition, the merits, *vel non,* of their individual claims are irrelevant to whether the elements of Fed. R. Civ. P. 23 could be satisfied in this case. Defendants further object on the ground that the phrases "relating to the subject matter of this litigation" and "fit the class definition" are vague and ambiguous, calling for speculation. Moreover, the request is burdensome because it would require a file-by-file review because Orkin does not have computerized records sufficient to identify every person listed in the interrogatory for the entire RELEVANT TIME PERIOD. Subject to and without waiving the foregoing and General Objections, Defendants state that, between October 2003 and the filing of this Complaint, and excluding small claims matters, Orkin has only been sued once in California relating to termite treatment and that action was settled before this action was filed.

POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL

**Defendants' Further Response After the Meet and Confer to No. 2:** List of residential subterranean termite customers in Arkansas and California who commenced litigation (other than small claims) or initiated arbitration against Orkin, if any, between January 1, 1999 and June 1, 2008 based on a contract for the treatment of subterranean termites (Inter 2).

**Plaintiffs' Position and Grounds to Compel on Interrogatory 2**: Like the previous interrogatory, the disagreement on the appropriate response to Interrogatory no. 2 turns on the effective date range. Plaintiffs believe that the relevant time period begins on October 1, 1987 to comport with the proposed class period. This date is important as discussed above. The Class definition proposed by Plaintiffs includes any current customers that entered into subterranean termite service agreements since this monumental change in industry practice.

Further, this information is relevant as it is needed to determine the size of the potential class and to determine if it meets the requirements of Rule 23 of the Federal Rules of Civil Procedure. It will also possibly shrink class size. This information is also essential in calculating potential damages.

**Discussion and Position on Interrogatory 3**
**and Document Request 4**

Interrogatory No. 3: IDENTIFY all customers of DEFENDANTS during the RELEVANT TIME PERIOD who fit the class definition in the COMPLAINT and who have signed a release of claims (or any other DOCUMENT which may relieve DEFENDANTS of potential legal obligations) related to WDO services, WDO infestation or WDO damage.

Response to Interrogatory No. 3: Defendants object to this interrogatory because it is overly broad, unduly burdensome, and seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Among other reasons, the request is improper because it seeks information about individual putative class members,

which is completely irrelevant prior to class certification. Moreover, this interrogatory is unduly burdensome because any releases responsive to this request are not maintained in a central location but, rather, are maintained in over ten thousand individual customer or claim files, requiring a file-by-file review. Subject to and without waiving the foregoing and General Objections, and pursuant to Fed. R. Civ. P. 33(d), Defendants will produce manuals identified in response to Interrogatory 10 that contain exemplar releases that may have been used in the course of Orkin's subterranean termite treatment business in California between October 2003 and the filing of the Complaint.

Document Request No. 4: Produce all DOCUMENTS constituting a release of claims (or any other DOCUMENT which may relieve DEFENDANTS of potential legal obligations) related to WDO services, WDO infestation or WDO damage which relate to or concern the customers identified in DEFENDANTS' response to Interrogatory Number 3 and produce all DOCUMENTS relating to the execution of such DOCUMENTS from the customers or properties identified in response to interrogatory number 3.

Response to Document Request No. 4: Defendants object to this request because it is overly broad, unduly burdensome, and seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence.  Among other reasons, the request is improper because it seeks information about individual putative class members, which is completely irrelevant prior to class certification. Moreover, this request is unduly burdensome because releases are not maintained in a central location but, rather, are maintained in over ten thousand individual customer or claim files, requiring a file-by-file review. Subject to and without waiving the foregoing and General Objections, Defendants will produce manuals identified in response to Interrogatory 10 that contain exemplar releases that may have been used in the course of Orkin's subterranean termite treatment business in California between October 2003 and the filing of the Complaint.

**Defendants' Further Response After the Meet and Confer to Interr. 3 and Doc. Req. 4:** Plaintiffs requested copies of releases by members of the putative class who have released

their claims and therefore are not members of the class. Orkin has already agreed to produce manuals containing exemplar release forms. During the meet and confer, Orkin explained the difficulty in obtaining individual copies of all of the requested executed releases, and offered to work with plaintiffs informally on calculating an approximate number of Orkin customers who executed a release and, therefore, who are unlikely to be a member of the class. Plaintiffs rejected Orkin's offer.

**Plaintiffs' Position and Grounds to Compel on Interr. 3 and doc. Req. 4:**  The disagreement on the appropriate response to Interrogatory no. 3 and Request No. 4 again turns on the effective date range.  Plaintiffs believe that the relevant time period begins on October 1, 1987 to comport with the proposed class period.  Moreover, this request is squarely aimed at Orkin's Answer which claims release for customers.

Further, this information is relevant as it is needed to determine the size of the potential class and to determine if it meets the requirements of Rule 23 of the Federal Rules of Civil Procedure.  This information is also essential in calculating potential damages. Additionally, this information is relevant in that it is likely to show a pattern and practice of the kinds of wrongdoing alleged in the complaint and Defendants failure to remedy the treatment deficiencies as required by the contract.  Orkin does not intend to meet its treatment and repair obligations but instead adjusts and settles "claims."  Orkin's claim that it will be hard to find releases is bogus.  Orkin admits it can provide a list of releases.  Orkin is highly computerized since the mid-80s and capable of printing any report imaginable.  Based on previous litigation, Orkin keeps releases and related documents in the branch file and/or claim files.  Orkin is too smart to not have access to documents which could stop future claims.  This is evidenced by its release defense.  Form releases will be in contravention of Orkin's duties across the whole class.

## Discussion and Position on Interrogatories 4, 5
## and Document Request 5

POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL

Interrogatory No. 4: IDENTIFY all customers of DEFENDANTS during the RELEVANT TIME PERIOD who fit the class definition in the COMPLAINT and for whom DEFENDANTS maintain they have defenses for nonpayment, breach of contract, or other claims or defenses excusing DEFENDANTS' performance, liability, and/or limiting damages under a WDO SERVICE contract.

Response to Interrogatory No. 4: Defendants object to this interrogatory because it is overly broad, unduly burdensome, and calls for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. In particular, this interrogatory is unduly burdensome because it would require, at a minimum, for over ten thousand putative class members: (1) a review of each branch file for each putative class member; (2) interviews with current and former branch employees; (3) discovery from each putative class member; and (4) a property inspection of each property. Moreover, prior to class certification, the merits of each putative class member's claim are irrelevant. The purpose of the class certification inquiry under Fed. R. Civ. P. 23 is to determine whether there is a common body of proof that would permit the named Plaintiffs, in proving their own claims, to necessarily prove the claims of all other absent class members. *See In re Rubber Chemicals Antitrust Litig.,* 232 F.R.D. 346, 352 (N.D. Cal. 2005). With few exceptions, none of which are applicable here, the merits of the claims of the putative class members are not relevant to the class certification inquiry. *See Eisen,* 417 U.S. at 177; *see also Hanon,* 976 F.2d at 509. Defendants further object to the extent that the request invades the financial privacy of Defendants' customers.

Interrogatory No. 5: Describe, in detail and with specificity, each fact which supports each claim or defense DEFENDANTS claim they have as to each customer or property identified in response to Interrogatory Number 4 and, as to each customer or property, IDENTIFY the person with the most knowledge of such claims or defenses.

Response to Interrogatory No. 5: Defendants hereby incorporate by reference their Response to Interrogatory No. 4.

POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL

1

2

3       <u>Document Request No. 5:</u> Produce all documents and things relating to your

responses to Interrogatory Number 5.

        <u>Response to Document Request No. 5:</u> Defendants object to this request because

it is overly broad, unduly burdensome, and seeks irrelevant information not reasonably

calculated to lead to the discovery of admissible evidence. In addition, it seeks documents

over a twenty-year period and is not limited to subterranean termites. This request is unduly

burdensome because it would require, at a minimum: (1) a review of each branch file for

each putative class member; (2) interviews with current and former branch employees; (3)

discovery from each putative class member; and (4) a property inspection of each

property. Moreover, prior to class certification, the merits of each putative class member's

claim are irrelevant. The purpose of the class certification inquiry under Fed. R. Civ. P. 23 is to

determine whether there is a common body of proof that would permit the named Plaintiffs,

in proving their own claims, to necessarily prove the claims of all other absent class

members. *See In re Rubber Chemicals,* 232 F.R.D. at 352. With few exceptions, none of

which is applicable here, the merits of the claims of the putative class members are not

relevant to the class certification inquiry. *See Eisen,* 417 U.S. at 177; *see also Hanon,* 976

F.2d at 509. Defendants further object to the extent that the request invades the financial

privacy of Defendants' customers. Defendants further object to the term "things" as vague

and ambiguous, calling for speculation.

        **<u>Defendants' Further Response After the Meet and Confer to Interr. 4 , 5 and Doc.</u>**

**<u>Req. 5:</u>** Plaintiffs have requested that Orkin state every breach of contract claim it has against all

putative class members. Orkin objected and explained that it could not do so absent a file-by-file

review, interviews with Orkin employees and homeowners, and a property inspection conducted

by Orkin's experts. During the meet and confer, the parties discussed a possible compromise in

which Orkin would re-state the breach of contract defenses that could be asserted based on the

contracts at issue in the case. Given that Orkin has already agreed to produce exemplar form

POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL

contracts, pursuant to Fed. R. Civ. P. 33, plaintiffs can review for themselves the types of contract defenses Orkin may raise.

**Plaintiffs' Position and Grounds to Compel on Interr. 4 , 5 and Doc. Req. 5:**  This information is relevant in that it is likely to show a pattern and practice of the kinds of wrongdoing alleged in the complaint and Defendants knowledge of and failure to remedy the treatment deficiencies as required by the contract.  Plaintiffs request that Defendants identify the facts upon which they would rely in not enforcing a contract, i.e. circumstances or conditions conducive known to them that they believe violate the terms of the service agreements that would then excuse Defendants performance and release them from liability.  Plaintiffs simply want Orkin's fact contentions which support its stated common defenses to form contracts. Additionally, Defendants could identify customers whose claims were denied during the relevant period and why, all found by computer search. Orkin can and must provide this discovery for the same reasons stated above as to Interrogatories 4, 5 and Document Request 5.

## Discussion and Position on Interrogatories 6, 7 and Document Request 7

Interrogatory No. 6: Describe, in detail and with specificity, including itemizations and calculations of how much money it would cost to reimburse Plaintiffs and all other members of the Class as defined in the COMPLAINT for all monies paid to DEFENDANTS during the RELEVANT TIME PERIOD plus prejudgment interest, and IDENTIFY all persons and entities all DOCUMENTS consulted or referenced in answering this request.

Response to Interrogatory No. 6: Defendants object to this interrogatory because it is overly broad, unduly burdensome, and seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Among other reasons, the request is improper because Plaintiffs have not yet identified their theory of damages, and because the facts regarding reimbursements owed to particular members are completely irrelevant prior to class certification. Defendants further object on the ground that the interrogatory is vague and

ambiguous because it does not specify for what Plaintiffs are seeking reimbursement, nor what they mean by "cost to reimburse" all putative class members. Defendants further object to the request to calculate putative damages or "pre-judgment interest" because it calls for legal analysis or expert testimony and cannot be determined on the basis of year-end reports.

Document Request No. 7: Produce all DOCUMENTS related to or concerning how DEFENDANTS calculated the amounts of money to charge California customers for initially placing a structure under a WDO SERVICE contract and IDENTIFY the time periods that the policies, practices and procedures reflected in any such DOCUMENTS were effective, in use, changed, or available for use. The response to this request should include but not be limited to the provision of all "Rate Cards."

Response to Document Request No. 7: Defendants object to this request because it is overly broad, irrelevant, and seeks the disclosure of confidential or proprietary knowledge and/or business or commercial information. Among other reasons, the request is improper because it is not limited to subterranean termites and purports to cover a twenty-one year period. Moreover, *how* Defendants determine their prices is completely irrelevant to any claims in the Plaintiffs' Complaint, which does not challenge the method by which Orkin sets its prices. As to the actual prices charged to California customers (as opposed to the method for calculating such prices), the request is also improper because the amount of such charges are irrelevant to any issue for class certification or liability and are relevant only as to damages in the event that the putative class is certified. Defendants further object that the request to "identify" when certain documents were effective is an improper document request. Defendants further object to this request on grounds that the phrase "things relating to" is vague and ambiguous, calling for speculation. Subject to and without waiving the foregoing and General Objections, Defendants will make available for inspection and copying at a mutually agreeable time and place the rate cards available for use in California between October 2003 and the present.

**Defendants' Further Response After the Meet and Confer to Interr. 6 and Doc. Req. 7:** Plaintiffs have requested a detailed accounting of the alleged damages for the putative class. Orkin objected. During the meet and confer process, Orkin agreed to provide a narrative about the system capabilities to identify and quantify the monies paid by putative class members and then work with plaintiffs to gather such information if and when a class is certified. (Orkin has also agreed to produce its rate cards used between January 1, 1999 and June 1, 2008.) Plaintiffs rejected the offer because they said the information was relevant to whether a class should be certified under Fed. R. Civ. P. 23(b)(1)(B). Given that there is almost certainly no risk that a claim of an individual class member "could substantially impair or impede" the ability of the putative class to recover money from Orkin, Rule 23(b)(1)(B) is inapplicable.

Interrogatory No. 7: Describe, in detail and with specificity, including itemizations and calculations of all assets of DEFENDANTS or other sources available to DEFENDANTS to pay the totals of the money calculated in response to

Interrogatory Number 6 should DEFENDANTS be ordered to pay them and IDENTIFY all persons, entities, and DOCUMENTS consulted or referenced in answering this request.

Response to Interrogatory No. 7: Defendants hereby incorporate by reference their Response to Interrogatory No. 6. Subject to and without waiving the foregoing and General Objections, and pursuant to Fed. R. Civ. P. 33(d), Defendants will make available for inspection and copying at a mutually agreeable time and place all annual financial reports filed with the SEC (Form 10-K) for 2003, 2004, 2005, 2006, and 2007.

**Defendants' Further Response After the Meet and Confer to Interr. 7:** Plaintiffs requested financial information about Orkin. Orkin agreed to produce various financial statements reflected in the annual reports of its parent company, Rollins, Inc. Orkin does not, however, maintain separate financial statements. Orkin will, therefore, stand on its objections and produce only the annual reports of its parent company, Rollins, Inc.

**Plaintiffs' Position and Grounds to Compel on Interr. 6, 7 and Doc. Req. 7:** Plaintiffs believe this information and related documents are crucial to establishing whether or not this case is going to be certified as a limited fund case under Fed. R. Civ. P. 23(b)(1)(B). Orkin is believed to be self insured. Additionally, Plaintiffs believe that the date range for the rate cards needs to encompass the entire class period as proposed by the plaintiffs and starting on October 1, 1987. Moreover, there are likely documents other than rate cards which are responsive. A computer report will reveal all money paid by each class member. Simple math follows.

### Discussion and Position on Interrogatories 8, 9 and Document Requests 8, 9

Interrogatory No. 8: IDENTIFY by name, product label and effective dates (and dates of any revisions of product label), all liquid chemical termiticides and "baiting" systems used for purposes of preventing or controlling subterranean (ground) termites at DEFENDANTS' initial issuance of a WDO SERVICE contract or plan to its customers during the RELEVANT TIME PERIOD.

Response to Interrogatory No. 8: Defendants object to this request as vague and ambiguous. It is also overly broad and not reasonably restricted as to time, location, or subject matter and, therefore, calls for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Without limiting the foregoing, the request is improper because it covers a twenty-one year period well beyond the application limitations period, and covers wood-destroying organisms other than subterranean termites. Subject to and without waiving the foregoing and General Objections, and pursuant to Fed. R. Civ. P. 33(d), Defendants will make available for inspection and copying at a mutually agreeable time and place labels for products used to treat subterranean termites in California between October 2003 and the present. In addition, Defendants will provide a preliminary

list of the names of the relevant products and the approximate dates they were used in California: (Chart not reproduced in this motion included the names of various chemicals used by Defendants from 1999 to present).

Interrogatory No. 9: IDENTIFY by name, product label and effective dates (and dates of any revisions of product label), all liquid chemical termiticides and "baiting" systems used for purposes of preventing or controlling subterranean (ground) termites for purposes other than DEFENDANTS' initial issuance of a WDO SERVICE contract or plan to its customers during the RELEVANT TIME PERIOD.

Response to Interrogatory No. 9: Defendants incorporate by reference herein their Response to Interrogatory No. 8.

Document Request No. 8: Produce all product labels and all revisions thereof for liquid chemical termiticides and "baiting" systems identified in response to Interrogatories 8 and 9.

Response to Document Request No. 8: Defendants object to this request as vague and ambiguous. The request is also overly broad and calls for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence to the extent it covers termiticides used in states other than California, the period preceding October 2003, and wood-destroying organisms other than subterranean termites. Subject to and without waiving the foregoing and General Objections, Defendants will make available for inspection and copying at a mutually agreeable time and place labels for products used to treat subterranean termites in California between October 2003 and the present.

Document Request No. 9: Produce all DOCUMENTS relating to the factors or criteria used by DEFENDANTS to determine the product used to treat its [sic] WDO customers' properties during the RELEVANT TIME PERIOD.

Response to Document Request No. 9: Defendants object to this request on the ground that the phrase "factors or criteria" is vague and ambiguous, calling for speculation. Defendants further object that this request is overly broad and calls for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Among other

reasons, the request seeks documents regarding treatment of all wood-destroying organisms, and is not limited to subterranean termites, nor the State of California. Subject to and without waiving the foregoing and General Objections, Defendants will make available for inspection or copying at a mutually agreeable time and place Orkin's annual product information memoranda between October 2003 and April 2008.

**Plaintiffs' Position and Grounds to Compel on Interr. 8, 9 and Doc. Req. 8, 9:**

Defendants have agreed to expand the time period back to January 1, 1999 for these items. However, as with the other requests where the disagreement turns on the effective dates, Plaintiffs believe that the relevant time period should be October 1, 1987 to present for the reasons stated above. These requests seek to discover what products Orkin used to treat and retreat class structures and how Orkin decided which to use. The actual labels for the products provide common and precise amounts of products that must be used. This will show from common customer foundation size and chemical purchase records that Orkin did not follow these mandatory labels as a practice and did not intend to honor protection promises. The label directions' purpose is maximum protection.

**Discussion and Position on Interrogatories 10, 11, and 17 and
Document Requests 2, 10-16, 20, 21, 23-26, and 31**

Interrogatory No. 10: Describe, in detail and with specificity, DEFENDANTS' policies, practices, procedures, guidelines or standards during the RELEVANT TIME PERIOD for determining how treatment is actually to be performed in order to place a structure under a WDO SERVICE contract or bond, including, but not limited to, how any information is taken from field notes, an initial graph, or inspection report or other source, to a job work order or other DOCUMENT specifying the work to be performed at the property, and IDENTIFY the RELEVANT TIME PERIODS that any such policies, practices, procedures, guidelines or standards were effective, were in use, were changed, or were available for use.

POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL

<u>Response to Interrogatory No. 10:</u> Defendants object to this interrogatory because it is overly broad and calls for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Without limiting the foregoing, the request covers twenty years and all wood-destroying organisms even thought the Complaint is limited to subterranean termites. Defendants further object to this interrogatory on the ground that the phrases "how treatment is actually to be performed," and "how any information is taken from field notes, an initial graph, [etc.]" are vague and ambiguous, calling for speculation. Defendants further object to the request to identify, without substantive limitation, all changes in policies, practices, procedures, guidelines, or standards, on grounds that it would be unduly burdensome to do so, and because the production of such information is not likely to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing and General Objections, and pursuant to Fed. R. Civ. P. 33(d), on or about May 9 and 12, 2008, Defendants produced copies of numerous documents that reflect Orkin's general policies and practices regarding the treatment of subterranean termites in California. *(See* Focus 13540; K-LP 1-2733; K-SA 1-274; K-TB 1-268; TTEM 1-979). In addition, Orkin has produced other general policy and practice documents in connection with *McCord Properties, Ltd., et al. v. Orkin Exterminating Co., Inc.,* No. 2002-4981 (Jefferson County); *Junkin v. Orkin Exterminating Co., Inc.,* No. CV-2001-1038 (Tuscaloosa County); *Knopf v. Orkin Exterminating Co., Inc.,* No. CVO4-2693 (Jefferson County); *and Hanson v. Orkin Exterminating Co., Inc.,* No. CV01-06 (Tallapoosa County). Subject to Plaintiffs' countersignature, pursuant to a letter agreement dated June 5, 2008 (the "Letter Agreement"), Orkin has permitted Plaintiffs to use those documents in this action (consistent with the terms of that Letter Agreement) and Plaintiffs have agreed that Orkin need not reproduce such documents. In addition, to the extent Defendants have not already done so, and to the extent that the following exist, Defendants will make available for inspection and copying at a mutually agreeable time and place the Orkin: (1) Termite Treatment Expectations Manual; (2) FOCUS Administrative Manual; (3) General Office Procedure Manual; (4) The

Orkin Professional Initial Termite Control Training Manual; (5) Initial Termite Treatment Control Training Certified Field Trainer Handbook; (6) Service Manager(s) Manual; (7) Branch Manager Manual; (8) Region Manager Manual; (9) Sales Training Manual; (10) Service Alerts; (11) Technical Bulletin; and (12) Lesson Plans. Defendants will produce the foregoing documents for the period October 2003 to the present as they relate to the allegations of the Complaint and to the extent not previously produced to Plaintiffs' counsel.

Interrogatory No. 11: Describe, in detail and with specificity, DEFENDANTS' policies, practices, procedures, guidelines or standards during the RELEVANT TIME PERIOD for recording treatment work done at a structure on an application record, or other document(s) used to record such information, and IDENTIFY the RELEVANT TIME PERIODS that any such policies, practices, procedures, guidelines, standards or form documents were effective, were in use, were changed, or were available for use.

Response to Interrogatory No. 11: Defendants object to this interrogatory because it is overly broad and calls for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object on the ground that the phrase "recording treatment work done at a structure on an application record, or other document(s)" is vague and ambiguous, calling for speculation. Defendants further object to the request to identify, without substantive limitation, all changes in policies, practices, procedures, guidelines, or standards, on grounds that it would be unduly burdensome to do so, and because the production of such information is not likely to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing and General Objections, Defendants direct Plaintiffs to the documents identified in their Response to Interrogatory No. 10.

Interrogatory No. 17: Describe, in detail and with specificity, how, during the RELEVANT TIME PERIOD, DEFENDANTS' licensed employees and agents assure DEFENDANTS' unlicensed employees' and agents' proper observation and carrying out of DEFENDANTS' policies, practices, and procedures as evidenced by DOCUMENTS responsive to Requests for Production 45 and 46.

<u>Response to Interrogatory No. 17:</u> Defendants object to this interrogatory because it is overly broad and calls for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to the terms "unlicensed employee" and "proper observations" as vague and ambiguous, calling for speculation. Subject to and without waiving the foregoing and General Objections, Orkin states that as a matter of policy, Orkin uses only properly licensed employees to perform pest control activities that require such licensure. Orkin requires both new and existing employees to meet state training and licensure requirements, as well as its own internal training requirements, which in many instances exceed the requirements of state governments. Orkin's training policies and procedures are being produced pursuant to Fed. R. Civ. P. 33(d) in response to Interrogatory No. 10.

<u>Document Request No. 2:</u> Produce all DOCUMENTS and things relating in any way to DEFENDANTS' policies, practices and/or procedures during the RELEVANT TIME PERIOD regarding performance of WDO SERVICES, including but not limited to, sales, inspection services, treatment services, "bait" services, retreatment services, damage or other claims, and other services necessary to protect the properties of customers from WDOs and IDENTIFY the RELEVANT TIME PERIODS that any such policies, practices and procedures were effective, in use, were changed, or were available for use.

<u>Response to Document Request No. 2:</u> Defendants object to this request because it is overly broad and calls for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Among other reasons, the information sought covers over twenty years and is not limited to subterranean termites. Defendants further object on grounds of relevance, attorney/client privilege, and the work-product doctrine to the extent that the request seeks documents regarding how "claims" are handled. Defendants further object that the request to "identify" certain time periods is an improper document request.[2] Defendants further object to the term "things" and the phrases "other services necessary to protect the properties of

customers" and "relating in any way to Defendants' policies" because they are vague and ambiguous, calling for speculation.

Subject to and without waiving the foregoing and General Objections, on or about May 9 and 12, 2008, defendants produced copies of numerous documents that reflect Orkin's general policies and practices regarding the treatment of subterranean termites in California. *(See Focus 1-3540; K-LP 1-2733; K-SA 1-274; K-TB 1-268; TTEM 1-979)*. In addition, Orkin has produced other general policy and practice documents in connection with *McCord Properties, Ltd., et al. v. Orkin Exterminating Co., Inc.,* No. 2002-4981 (Jefferson County); *Junkin v. Orkin Exterminating Co., Inc.,* No. CV-2001-1038 (Tuscaloosa County); *Knopf v. Orkin Exterminating Co., Inc.,* No. CVO4-2693 (Jefferson County); *and Hanson v. Orkin Exterminating Co., Inc.,* No. CV01-06 (Tallapoosa County). Subject to Plaintiffs' countersignature, pursuant to a letter agreement dated June 5, 2008, Orkin has permitted Plaintiffs to use those documents in this action (consistent with the terms of that Letter Agreement) and Plaintiffs have agreed that Orkin need not reproduce such documents. In addition, to the extent Defendants have not already done so, and to the extent that the following exist, Defendants will make available for inspection and copying at a mutually agreeable time and place the Orkin: (1) Termite Treatment Expectations Manual; (2) FOCUS Administrative Manual; (3) General Office Procedure Manual; (4) The Orkin Professional Initial Termite Control Training Manual; (5) Initial Termite Treatment Control Training Certified Field Trainer Handbook; (6) Service Manager(s) Manual; (7) Branch Manager Manual; (8) Region Manager Manual; (9) Sales Training Manual; (10) Service Alerts; (11) Technical Bulletin; and (12) Lesson Plans. Defendants will produce the foregoing documents for the period October 2003 to the present as they relate to the allegations of the Complaint and to the extent not previously produced to Plaintiffs' counsel.

Document Request No. 10: Produce all DOCUMENTS and things relating to DEFENDANTS' treatment methods and specifications for subterranean (ground) termite treatment during the RELEVANT TIME PERIOD, and IDENTIFY the RELEVANT TIME

PERIODS that any such treatment methods/specifications were in use, were changed, or were available for use.

Response to Document Request No. 10: Defendants object to this request on the ground that the phrase "methods or specifications" is vague and ambiguous, calling for speculation. Defendants further object to the term "things" as vague and ambiguous, calling for speculation. To the extent that the request, in calling for the production of "things" is literally requesting equipment and tools used by Orkin in connection with the treatment of subterranean termite jobs, it is overly broad, unduly burdensome, disruptive of Orkin's business, and calls for irrelevant things not reasonably calculated to lead to the discovery of admissible evidence. Moreover, the request is overly broad and calls for irrelevant information because, among other reasons, it seeks documents over a twenty-year period and is not limited to the State of California.

Subject to and without waiving the foregoing and General Objections, on or about May 9 and 12, 2008, Defendants produced copies of numerous documents that reflect Orkin's general policies and practices regarding the treatment of subterranean termites in California. *(See* Focus 1-3540; K-LP 1-2733; K-SA 1-274; K-TB 1-268; TTEM 1-979). In addition, Orkin has produced other general policy and practice documents in connection with *McCord Properties, Ltd., et al. v. Orkin Exterminating Co., Inc.,* No. 2002-4981 (Jefferson County); *Junkin v. Orkin Exterminating Co., Inc.,* No. CV-2001-1038 (Tuscaloosa County); *Knopf v. Orkin Exterminating Co., Inc.,* No. CVO4-2693 (Jefferson County); *and Hanson v. Orkin Exterminating Co., Inc.,* No. CV01-06 (Tallapoosa County). Subject to Plaintiffs' countersignature, pursuant to a letter agreement dated June 5, 2008 (the "Letter Agreement"), Orkin has permitted Plaintiffs to use those documents in this action (consistent with the terms of that Letter Agreement) and Plaintiffs have agreed that Orkin need not reproduce such documents. In addition, to the extent Defendants have not already done so, and to the extent that the following exist, Defendants will make available for inspection and copying at a mutually agreeable time and place the Orkin: (1) Termite Treatment Expectations Manual; (2) FOCUS Administrative Manual; (3) General Office

Procedure Manual; (4) The Orkin Professional Initial Termite Control Training Manual; (5) Initial Termite Treatment Control Training Certified Field Trainer Handbook; (6) Service Manager(s) Manual; (7) Branch Manager Manual; (8) Region Manager Manual; (9) Sales Training Manual; (10) Service Alerts; (11) Technical Bulletin; and (12) Lesson Plans. Defendants will produce the foregoing documents for the period October 2003 to the present as they relate to the allegations of the Complaint and to the extent not previously produced to Plaintiffs' counsel.

Document Request No. 11: Produce all DOCUMENTS and things relating to which treatment methods/specifications identified in response to the immediately previous request, were required to satisfy: (a) termiticide product label requirements, (b) state regulatory requirements, and (c) DEFENDANTS' internal requirements, and IDENTIFY the RELEVANT TIME PERIODS that any such unit operations were used, were changed, or were available for use.

Response to Document Request No. 11: Defendants object to this request because, in its entirety, it is vague and ambiguous, incomprehensible, and cannot be answered as phrased. Moreover, the request is clearly a disguised interrogatory and, therefore, it is an improper document request. Ultimately, given the problems with the request, it is also overly broad and calls for the production of irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Among other reasons, it covers a twenty-year period and is not limited to the State of California. Finally, to the extent not covered, Defendants incorporate by reference their objections to Document Request No. 10 as if set forth fully herein.

Document Request No. 12: Produce all DOCUMENTS relating to DEFENDANTS' policies, practices, procedures, guidelines, standards or form documents used during the RELEVANT TIME PERIOD to determine how treatment is actually to be performed in order to place a structure under a WDO SERVICE contract or bond, including how any information is taken from field notes, an initial graph or inspection report, or other document, to a job work order or other DOCUMENT specifying the work to be performed at the property as described in response to Interrogatory 10.

<u>Response to Document Request No. 12:</u> Defendants object to this request because the phrases "how treatment is actually to be performed in order to place a structure under a WDO SERVICE contract or bond," and "information taken from field notes" are vague and ambiguous, incomprehensible, and, therefore, cannot be answered as phrased. Moreover, the request is overly broad and calls for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Among other reasons, all documents that merely "relate" to the actual policies and procedures followed by Orkin have no bearing on Plaintiffs' claims. Moreover, the request covers all wood-destroying organisms and is not limited to subterranean termites, and seeks documents over a twenty-year period. Subject to and without waiving the foregoing and General Objections, Defendants direct Plaintiffs to the documents produced in their Responses to Document Request Nos. 2 and 10.

<u>Document Request No. 13:</u> Produce all DOCUMENTS relating to DEFENDANTS' policies, practices, procedures, guidelines or standards for recording treatment work done at a structure on an application record, or other document(s) used to record such information as described in response to Interrogatory.

<u>Response to Document Request No. 13:</u> Defendants object to this request in that it is incomplete in failing to identify the Interrogatory to which it refers. Defendants further object to this request because it is overly broad and calls for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Among other reasons, the request is not limited to subterranean termites, and is not limited in time or to treatment performed in California. Subject to and without waiving the foregoing and General Objections, Defendants direct Plaintiffs to the documents produced in their Responses to Document Request Nos. 2 and 10.

<u>Document Request No. 14:</u> Produce all DOCUMENTS used to identify treatment mechanics/specifications to be completed in performance of termite treatment work to be performed at a structure, and IDENTIFY the RELEVANT TIME PERIODS any such DOCUMENTS were effective, were in use, were changed, or were available for use.

<u>Response to Document Request No. 14:</u> Defendants object to this request on grounds that the phrase "treatment mechanics" is vague and ambiguous, calling for speculation. Defendants further object to this request because it is overly broad and calls for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence because, among other reasons, it covers a twenty-year period, and is not limited to subterranean termites or the State of California. Moreover, Defendants object that the request to "identify" when certain documents were effective is an improper document request. Subject to and without waiving the foregoing and General Objections, Defendants direct Plaintiffs to the documents produced in their Responses to Document Request Nos. 2 and 10.

<u>Document Request No. 15:</u> Produce all DOCUMENTS and things relating to DEFENDANTS' policies, practices and procedures or form documents during the RELEVANT TIME PERIOD for investigations, inspections, and treatment(s) performed in response to discovery of WDO infestation or damage at a structure, and IDENTIFY the RELEVANT TIME PERIODS that any such policies, practices and procedures were effective, were in use, were changed, or were available for use.

<u>Response to Document Request No. 15:</u> Defendants object to this request on grounds that the terms "investigations" and "things" are vague and ambiguous, calling for speculation. Defendants further object to this request because it is overly broad and calls for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Among other reasons, the information sought covers more than twenty years and is not limited to subterranean termites or the State of California, and seeks the production of hundreds if not thousands of tools and machines that may have been used in connection with any so-called "investigations." Finally, Defendants object that the request to "identify" when certain documents were effective is an improper document request. Subject to and without waiving the foregoing and General Objections, Defendants direct Plaintiffs to the documents produced in their Responses to Document Request Nos. 2 and 10.

<u>Document Request No. 16:</u> Produce all DOCUMENTS and things relating to DEFENDANTS' training during the RELEVANT TIME PERIOD of all technicians or other personnel relating to performance of treatment or "bait" installation at structures for all purposes involved in providing WDO SERVICES to prospective, new or existing customers, including but not limited to any internal categorization of treatments (for example pretreatment, initial treatment, post-construction treatment, spot treatment, remedial treatment, the "Retreatment Credit Program," or other), and IDENTIFY the RELEVANT TIME PERIODS that any such training was used, was effective, was changed, or was available for use.

<u>Response to Document Request No. 16:</u> Defendants object to this request on grounds that the phrase "internally categorized" is vague and ambiguous, calling for speculation. Defendants further object to this request because it is overly broad and calls for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Among other reasons, the information sought covers more than twenty years and is not limited to subterranean termites. Finally, Defendants object that the request to "identify" when certain documents were effective is an improper document request. Subject to and without waiving the foregoing and General Objections, Defendants direct Plaintiffs to the documents produced in their Responses to Document Request Nos. 2 and 10.

<u>Document Request No. 20:</u> Produce all DOCUMENTS and things relating to DEFENDANTS' policies, practices and procedures for acquiring a waiver from its customers of termite treatment standards originated from any source, including but not limited to product label directions, regulatory requirements, or DEFENDANTS' own company standards, and any form waivers as described in response to Interrogatory 12.

<u>Response to Document Request No. 20:</u> Defendants object because the phrase "a waiver from its customers" is vague and ambiguous, calling for speculation. Defendants also object on the grounds of relevance because, among other reasons, no claims or issues regarding "waivers" are identified in the Plaintiffs' Complaint. Defendants further object to the term "things"(in the context of this document request) as vague and ambiguous, calling for

speculation. Defendants further object to the request to "identify," as an improper document request. Subject to and without waiving the foregoing and General Objections, Defendants agree to produce the documents identified in their Responses to Document Request Nos. 2 and 10.

Document Request No. 21: Produce all DOCUMENT and things relating to DEFENDANTS' policies, practices and procedures during the RELEVANT TIME PERIOD for determining whether or not to re-apply termiticides or service "bait" systems at structures under WDO SERVICE contracts issued by DEFENDANTS, and under such contracts acquired, initiated or otherwise obtained by DEFENDANTS, and IDENTIFY the RELEVANT TIME PERIODS that any such policies, practices and procedures were effective, were in use, were changed, or were available for use.

Response to Document Request No. 21: Defendants object to this request because it is overly broad and calls for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Among other reasons, (1) the information sought covers more than twenty years and is not limited to subterranean termites, and (2) covers contracts acquired by Orkin, which could not be included in the putative class. Defendants further object to the term "things" (in the context of this document request) as vague and ambiguous, calling for speculation. Moreover, Defendants further object that the request to "identify" when certain documents were effective is an improper document request. Subject to and without waiving the foregoing and General Objections, Defendants direct Plaintiffs to the documents produced in their Responses to Document Request Nos. 2 and 10.

Document Request No. 23: Produce all DOCUMENTS and things relating to DEFENDANTS' policies, practices and procedures during the RELEVANT TIME PERIOD relating to performing inspections at structures for all purposes involved in provision of WDO SERVICES to prospective, new or existing customers, including but not limited to any internal categorization of inspections (for example sales inspection, initial inspection, annual renewal inspection, inspection for suspected infestation or damage, quality audit inspections by

branch managers, or other), and IDENTIFY the RELEVANT TIME PERIODS that any such policies, practices and procedures were effective, were in use, were changed, or were available for use.

Response to Document Request No. 23: Defendants object to this request because it is overly broad and calls for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Among other reasons, the information sought covers more than twenty years and is not limited to subterranean termites. Defendants further object to the terms "things" (in the context of this document request) and "internal categorizations" as vague and ambiguous, calling for speculation. Moreover, Defendants further object that the request to "identify" when certain documents were effective is an improper document request. Subject to and without waiving the foregoing and General Objections, Defendants direct Plaintiffs to the documents produced in their Responses to Document Request Nos. 2 and 10.

Document Request No. 24: Produce all DOCUMENTS and things relating to DEFENDANTS' training during the RELEVANT TIME PERIOD of all technicians or other personnel regarding performance of inspections at structures for all purposes involved in providing WDO SERVICES to prospective, new or existing customers, including but not limited to any internal categorization of inspections (for example sales inspection, initial inspection, annual renewal inspection, inspection for suspected infestation or damage, quality audit inspections by branch managers, or other), and IDENTIFY the RELEVANT TIME PERIODS that any training was used, was effective, was changed, or was available for use.

Response to Document Request No. 24: Defendants object to this request because it is overly broad and calls for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Among other reasons, the information sought covers more than twenty years and is not limited to subterranean termites. Defendants further object to the term "things" (in the context of this document request) as vague and ambiguous, calling for speculation. Moreover, Defendants further object that the request to "identify" when certain documents were effective is an improper document request. Subject to and without waiving

the foregoing and General Objections, Defendants direct Plaintiffs to the documents produced in their Response to Document Request No. 2, and agree to produce any additional training manuals used in California since 2003 for the treatment of subterranean termites.

Document Request No. 25: Produce all DOCUMENTS relating to DEFENDANTS' policies, practices, procedures and form documents regarding internal use of information collected at inspections at structures for all purposes involved in provision of WDO SERVICES to prospective, new or existing customers, including but not limited to any internal categorization of inspections (for example sales inspection, initial inspection, annual renewal inspection, inspection for suspected infestation or damage, quality audit inspections by branch managers, or other), and relating to disclosure of any such information to customers as described in response to Interrogatory 13.

Response to Document Request No. 25: Defendants object to this request because the phrases "information collected at inspections," "internal use of information," and "internal categorization" are vague and ambiguous, calling for speculation. Defendants also object on the ground that the request is inconsistent to the extent that it requests "internal" information that was disclosed to customers. The request is also overly broad and calls for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence because, among other reasons, it is not limited to subterranean termites, or the relevant putative class period. Subject to and without waiving the foregoing and General Objections, Defendants refer Plaintiffs to the documents produced in their Responses to Document Request Nos. 2 and 10, and Defendants will also make available for inspection and copying at a mutually agreeable time and place exemplar inspection report forms used in California since October 2003.

Document Request No. 26: Produce all DOCUMENTS and things relating to all of DEFENDANTS' policies, practices and procedures during the RELEVANT TIME PERIOD regarding sales of contracts for the performance of WDO SERVICES, including but not limited to advertising, leads, inspection services, treatment services, and other services necessary to

protect the properties of DEFENDANTS' customers from attack by WDOs, including termites, and IDENTIFY the RELEVANT TIME PERIODS that any such policies, practices and procedures were effective, were in use, were changed, or were available for use.

Response to Document Request No. 26: Defendants object to this request because it is so overly broad and vague that it is incomprehensible and does not reasonably limit or identify the types of documents it seeks. The request is also overly broad and calls for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence because, among other reasons, the information sought covers more than twenty years and is not limited to subterranean termites. Defendants further object to the term "things" (in the context of this document request) as vague and ambiguous, calling for speculation. Moreover, Defendants further object that the request to "identify" when certain documents were effective is an improper document request. Subject to and without waiving the foregoing and General Objections, Defendants direct Plaintiffs to the policies reflected in the documents being produced pursuant to Document Request Nos. 2 and 10. In addition, Defendants will make available for inspection or copying at a mutually agreeable time and place (1) form contracts used in California since October 2003 for the treatment of subterranean termites; and (2) sales brochures used in California since October 2003 for subterranean termites.

Document Request No. 31: Produce all DOCUMENTS and things relating to DEFENDANTS' policies, practices, procedures, training, guidelines, and standards during the RELEVANT TIME PERIOD for taking its customers through the process of selling them a WDO SERVICE contract, including but not limited to oral representations and sales presentations, issuance of the bond (or contract) and performance of the initial services, and IDENTIFY the RELEVANT TIME PERIODS that any such policies, practices, procedures, guidelines or standards were effective, were in use, were changed, or were available for use.

Response to Document Request No. 31: Defendants object to this request because the terms and phrases "things relating to," "the process of selling," and "bond" are vague and ambiguous, calling for speculation. The request is also overly broad and seeks the production of

irrelevant documentation because, among other reasons, it seeks documents over a twenty year-period and is not limited to the sales of treatment for subterranean termites. Moreover, Defendants object that the request to "identify" when certain documents were effective is an improper document request. Subject to and without waiving the foregoing and General Objections, and in addition to the documents identified in Document Requests Nos. 2 and 10, Defendants will make available for inspection and copying at a mutually agreeable time and place the following documents, to the extent that they were used in California since October 2003 in connection with the sale of a subterranean termite job: (1) guarantee matrices; (2) rate cards; (3) form contracts; (4) sales brochures.

**Defendants' Further Response After the Meet and Confer to Interr. 10-13, 17 and Doc. Req. 2, 4, 10-16, 20, 21, 23-26, 31:** These interrogatories and document requests seek information about a variety of treatment, inspection, baiting, sales, and training policies and practices. Orkin has already produced numerous documents that reflect Orkin's general policies and practices regarding the treatment of subterranean termites in California. (See Focus 1-3540; K-LP 1-2733; K-SA 1-274; K-TB 1-268; TTEM 1-979). In addition, to the extent Orkin has not already done so, and to the extent that the following exist, Orkin will make available for inspection and copying at a mutually agreeable time and place the Orkin: (1) Termite Treatment Expectations Manual; (2) FOCUS Administrative Manual; (3) General Office Procedure Manual; (4) The Orkin Professional Initial Termite Control Training Manual; (5) Initial Termite Treatment Control Training Certified Field Trainer Handbook; (6) Service Manager(s) Manual; (7) Branch Manager Manual; (8) Region Manager Manual; (9) Sales Training Manual; (10) Service Alerts; (11) Technical Bulletin; and (12) Lesson Plans, dated between January 1, 1999 and June 30, 2008. Plaintiffs claim that Orkin's production is deficient but, when pressed, plaintiffs offered only very discrete examples, which they expressly claimed were not exclusive and, therefore, provided no basis for resolving the dispute. Plaintiffs would not agree to any reasonable limits on the requests that would have permitted Orkin to make a more meaningful response. Orkin, therefore, stands on its objection.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Plaintiffs' Position and Grounds to Compel on Interr. 10, 11, 17 and Doc. Req. 2, 10-16, 20, 21, 23-26, and 31:** Defendants have agreed to expand the time period back to January 1, 1999 for these items.  However, as with the other requests where the disagreement turns on the effective dates, Plaintiffs believe that the relevant time period should be October 1, 1987 to present for the reasons stated above. These requests seek descriptions of and documents concerning discoverable information:  how Orkin treats, how it records such, how it incorporates specific entomological knowledge required by California law, how it services WDO customers from sale onward, how it handles claims, how it handles waivers of service standards or informed customer-approved deviations for standard services owned, when and how it retreats or services "baits," how it inspects under all circumstances, how it sells and represents its services, and how it trains and supervises all of the above.

Additionally, Plaintiffs have agreed to provide Defendants with a list of the documents currently in their possession that were obtained through discovery in previous litigation.  This should eliminate the problem of redundant production for Defendants. However, Orkin must state in sworn responses which documents are responsive to which requests.  Moreover, Orkin must verify complete documents and effective dates.  This information is kept in a central library in Atlanta called (it is believed) Policies and Procedures, run by Cindy Bordes.  In previous litigation, Orkin took advantage of confusion on when policies were effective or changed yet refused to clarify and sought to produce only what Plaintiff could guess Orkin had, not what Orkin knows is responsive.  Orkin's policy documents are like the Code of Federal Regulations or a West legal publication, routinely supplemented or changed a page at a time.

Further, these requests go beyond the manuals Defendants have agreed to produce and also include other training and promotional aids such as video tapes, speeches, computer records, presentations to trade groups or vendors, and materials received from third parties such as trade groups, chemical manufacturers, and vendors, etc.  This material is relevant and need to establish and show the company wide knowledge of the wrongdoing and failure to take any steps to remedy these problems.  This material shows proper procedures and Orkin's knowledge thereof

POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL

but will prove the policies are public relations "paper tigers" since other records (such as payroll and bonuses as discussed elsewhere) will reveal Orkin says and promises one thing but knowingly does not do it or fails to supervise for a profit motive.

### Discussion and Position on Interrogatory 12

Interrogatory No. 12: Describe, in detail and with specificity, DEFENDANTS' policies, practices and procedures during the RELEVANT TIME PERIOD for acquiring a waiver from its customers of any termite treatment standards originating from any source, including but not limited to product label directions, regulatory requirements, or DEFENDANTS' own company standards, and IDENTIFY THE RELEVANT TIME PERIODS that any such policies, practices or procedures were effective, were in use, were changed, or were available for use.

Response to Interrogatory No. 12: Defendants object to this interrogatory because it is overly broad and seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Among other reasons, the information sought is irrelevant because no claims or issues regarding "waivers" are identified in the Plaintiffs' Complaint. Defendants further object on grounds that the phrase "a waiver from its customers of any termite treatment standards originating from any source" is vague and ambiguous, calling for speculation. Moreover, Defendants object to the request to identify, without substantive limitation, all changes in policies, practices, procedures, guidelines or standards, on grounds that it would be unduly burdensome to do so, and because the production of such information is not likely to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing and General Objections, Defendants direct Plaintiffs to the documents identified in their Response to Interrogatory No. 10.

### Defendants' Further Response After the Meet and Confer to Interr. 10-13, 17 and Doc. Req. 2, 4, 10-16, 20, 21, 23-26, 31:

(see above comments under interr. 10, 11)

POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL

**Plaintiffs' Position and Grounds to Compel on Interr. 12:** Defendants have agreed to expand the time period back to January 1, 1999 for these items. However, as with the other requests where the disagreement turns on the effective dates, Plaintiffs believe that the relevant time period should be October 1, 1987 to present for the reasons stated above. Routinely, Orkin violates good practices without telling customers. This information will discover that Orkin knows it is doing wrong.

Additionally, Plaintiffs have agreed to provide Defendants with a list of the documents currently in their possession that were obtained through discovery in previous litigation. This should eliminate the problem of redundant production for Defendants. Further, this interrogatory seeks information that goes beyond the manuals that Defendants have agreed to produce. Namely, Defendants contends that customers excused them from complying with Orkin, federal, state, and label requirements. Plaintiffs contend that circumstances where waivers of regulatory compliance were sought, obtained and/or received are highly relevant to the potential defenses raised by Orkin. This includes items such as customer checklists and guarantee checklists. These may narrow class issues.

**Discussion and Position on Interrogatory 13**

Interrogatory No. 13: Describe, in detail and with specificity, DEFENDANTS' policies, practices and procedures during the RELEVANT TIME PERIOD regarding internal use of information collected at inspections at structures for all purposes involved in provision of WDO SERVICES to prospective, new or existing customers, including but not limited to any internal categorization of inspections (for example sales inspection, initial inspection, annual renewal inspection, inspection for suspected infestation or damage, quality audit inspections by branch managers, or other), and for the disclosure of any such

information to customers, and IDENTIFY the RELEVANT TIME PERIODS that any such policies, practices and procedures were effective, were in use, were changed, or were available for use.

Response to Interrogatory No. 13: Defendants object to this interrogatory because it is overly broad and seeks irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object on grounds that the phrase "internal use" of information is vague and ambiguous, calling for speculation. Defendants further object to the request to identify, without substantive limitation, all changes in policies, practices, procedures, guidelines, or standards, on grounds that it would be unduly burdensome to do so, and because the production of such information is not likely to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing and General Objections, Defendants direct Plaintiffs to the documents identified in their Response to Interrogatory No. 10.

**Defendants' Further Response After the Meet and Confer to Interr. 10-13, 17 and Doe. Req. 2, 4, 10-16, 20, 21, 23-26, 31:**

(see above under interr. 10, 11)

**Plaintiffs' Position and Grounds to Compel on Interr. 13:** Defendants have agreed to expand the time period back to January 1, 1999 for these items. However, as with the other requests where the disagreement turns on the effective dates, Plaintiffs believe that the relevant time period should be October 1, 1987 to present for the reasons stated above.

As with the previous response, this interrogatory seeks information that goes beyond the manuals that Defendants have agreed to produce. Namely, Defendants internal documents about customers' current property conditions that were not reported to the customer by reported only internally through the Defendants' offices. Plaintiffs believe that this information will show knowledge of the Defendants regarding potential claims and the failure to disclose these to the issues to the customers. One example (NOT a limitation on responses) from previous litigation is that Orkin inspection forms contain a "BRANCH ONLY" copy which lists problems not disclosed on customer copies. This shows Orkin is sheltering itself from liability and not seeking

to warn and protect customers.  This information is used to compile reports such as internal "Quality Assurance Audits" which show failure to meet promises nationwide under uniform standards.

### Discussion and Position on Interrogatories 14, 18 and Document Requests 29, 47

Interrogatory No. 14: Describe, in detail and with specificity, and IDENTIFY by name all advertising campaigns used by DEFENDANTS in the State of California during the RELEVANT TIME PERIOD which relate to WDO SERVICES and IDENTIFY each time period when each was used by month(s) and year(s).

Response to Interrogatory No. 14: Defendants object to this interrogatory because it is overly broad and calls for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Among other reasons, this request seeks information about advertisements that Plaintiffs testified on May 20 and 22 that they never saw or heard; therefore, they have no standing to assert claims based on such advertisements. Defendants further object to this interrogatory on the ground that what is meant by "advertising campaigns" is vague and ambiguous, calling for speculation. Subject to and without waiving the foregoing and General Objections, and pursuant to Fed. R. Civ. P. 33(d), Defendants will make available for inspection and copying sales brochures for subterranean termite treatments, including monitoring and baiting, that were used in California between 2003 and the present.

Interrogatory No. 18: Describe, in detail and with specificity, DEFENDANTS' procedures, policies, and process(es) with regard to assuring that their advertising during the RELEVANT TIME PERIOD and as described by DEFENDANTS in responses to requests throughout this pleadings, and the statements
or representations therein concerning structural pest control were not unfair, deceptive, untrue, or misleading pursuant to Regulation 1999.5. The response to this request should include

but not be limited to any investigations of the bases of any statement or representation to assure it is not unfair, untrue, deceptive, or misleading.

<u>Response to Interrogatory No. 18:</u> Defendants object to this interrogatory because it is overly broad and calls for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Among other reasons, this request seeks information about advertisements that Plaintiffs testified on May 20 and 22 that they never saw or heard; therefore, they have no standing to assert claims based on such advertisements.

<u>Document Request No. 29:</u> Produce all DOCUMENTS related to or concerning the advertising campaigns described in response to Interrogatory 14.

<u>Response to Document Request No. 29:</u> Defendants object to this request for the reasons stated in response to Interrogatory No. 14 and Document Request No. 27, which are incorporated herein by reference.

<u>Document Request No. 47:</u> Produce all DOCUMENTS relating to the response to Interrogatory 18.

<u>Response to Document Request No. 47:</u> Defendants object to this request because it is overly broad and calls for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Among other reasons, this request seeks information about advertisements that Plaintiffs testified on May 20 and 22, 2008 that they never saw or heard; therefore, they have no standing to assert claims based on such advertisements.

**<u>Defendants' Further Response After the Meet and Confer to Inter. 14 and Doc. Req. 29:</u>** Plaintiffs requested in discovery virtually all Orkin advertising. Orkin objected because, among other reasons, the named plaintiffs do not claim to have based any decision regarding Orkin on any Orkin advertising other than perhaps the marketing materials that Orkin gave them at the point-of-sale. (Indeed, plaintiffs in the California action do not recall seeing any Orkin advertising other than perhaps the point-of-sale materials, which Orkin has agreed to produce.) Plaintiffs do not have standing to sue for alleged advertising that they neither saw nor heard.

**Defendants' Further Response After the Meet and Confer to Interr. 18. and Doc. Req. 47.** Plaintiffs requested information about Orkin's procedures and policies for substantiating their advertisements. Plaintiffs have no standing to challenge any advertisements, so the substantiation for such advertising would be completely irrelevant for even discovery purposes. Moreover, given the wide variety of procedures and processes for substantiation based on the type of claim being made and the type of advertisement, Orkin cannot provide the *requested* information without a more particular identification of the certain advertisements upon which plaintiffs request such information.

**Plaintiffs' Position and Grounds to Compel on Interr. 14, 18 and Doc. Req. 29, 47:**
Plaintiffs can challenge any ad including those he did not see. This request includes ads that were published to public in general and to putative class member specifically. This request also includes printed advertisements as well as envelope stuffers. This evidence will go to show a pattern of practice wherein Defendants advertised for services that they never intended to provide and/or performance capabilities that they had reason to know they could not provide without substantiating. This evidence will also support the claims for unfair trade practices and fraud as they will tend to show the pattern of deceptive language and misleading claims. As with other requests and for the reasons stated above, the relevant time period starts on October 1, 1987 to present.

Defendants suggest that Plaintiffs should identify particular advertisements to which there are questions about the basis of the claims. However, Plaintiffs need to have the advertisements from the relative time period before they may identify particular advertisement claims that are believed to be unfounded and unsubstantiated. The request does not have to seek admissible evidence.

**Discussion and Position on Interrogatories 15, 16 and**
**Document Requests 38, 39 and 40**

POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL

Interrogatory No. 15: Describe, in detail and with specificity, the subject matter of any investigation of DEFENDANTS by regulatory agencies, state Departments of Agriculture or any Federal agency, department, or commission, etc. during the RELEVANT TIME PERIOD related to complaints regarding DEFENDANTS' WDO SERVICES, DEFENDANTS' business practices, or DEFENDANTS' advertising, all limited to investigations more broad in scope than investigation of a customer complaint regarding WDO SERVICES performed at a single structure.

Response to Interrogatory No. 15: Defendants object to this interrogatory because it is overly broad and calls for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Among other reasons, the request is not limited to the allegations of the Complaint (indeed, it is not even limited to subterranean termites) but, rather, seeks information regarding investigations on just about any conceivable topic for the past twenty-one years in any state in the country. Defendants further object on grounds that the phrase "investigations more broad in scope than investigation of a customer complaint regarding WDO SERVICES performed at a single structure" is vague and ambiguous, calling for speculation. Subject to and without waiving the foregoing and General Objections, Defendants state that, other than routine inquiries a pest control operator may receive from time to time in connection with a particular customer question or complaint, the State of California, including the State Attorney General, the Structural Pest Control Board, or the California Environmental Protection Agency have not undertaken any investigation of Orkin's termite treatment business or practices in California between October 2003 and the present.

Interrogatory No. 16: Describe, in detail and with specificity, the methods used during the RELEVANT TIME PERIOD to provide uniform relief to DEFENDANTS' customers pursuant to settlements, consent decrees and/or plea agreements between DEFENDANTS and state Departments of Agriculture, regulatory agencies or any Federal agency, department, commission, etc.

Response to Interrogatory No. 16: Defendants object to this interrogatory because it is overly broad and calls for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Among other reasons, the request is not limited to the allegations of the Complaint (indeed, it is not even limited to subterranean termites) but, rather, seeks information regarding investigations on just about any conceivable topic for the past twenty-one years in any state in the country. Defendants further object to this request because the phrases "uniform relief," and "etc." are vague and ambiguous, calling for speculation. Subject to and without waiving the foregoing and General Objections, Defendants state that they have not entered into any settlements, consent decrees, or plea agreements with any governmental body regarding Orkin's termite treatment business or practices in California subsequent to October 2003.

Document Request No. 38: Produce all DOCUMENTS relating to any investigations and methods to provide relief as described in response to Interrogatories 15 and 16.

Response to Document Request No. 38: Defendants incorporate their responses and objections to Plaintiffs' Interrogatory Nos. 15 and 16 as if set forth fully herein.

Document Request 39: Produce all DOCUMENTS relating to settlements, consent decrees or plea agreements DEFENDANTS have reached with state Departments of Agriculture, regulatory agencies or any Federal agency, department, commission, etc. during the RELEVANT TIME PERIOD.

Response to Document Request No. 39: Defendants incorporate their responses and objections to Plaintiffs' Interrogatory Nos. 15 and 16 as if set forth fully herein.

Document Request No. 40: Produce all DOCUMENTS relating to DEFENDANTS policies, practices, procedures, guidelines or form documents during the RELEVANT TIME PERIOD for compliance with any settlements, consent decrees or plea agreements DEFENDANTS have reached with state Departments of Agriculture, regulatory agencies or any Federal agency, department, commission, etc.

<u>Response to Document Request No. 40:</u> Defendants incorporate their responses and objections to Plaintiffs' Interrogatory Nos. 15 and 16 as if set forth fully herein.

**<u>Defendants' Further Response After the Meet and Confer to Inter. 15, 16 and Doc. Req. 38, 39 and 40:</u>** Plaintiffs requested information about investigations by any governmental entity on virtually any topic, even if completely unrelated to the allegations of the complaint. Orkin objected but noted that, other than routine inquiries a pest control operator may receive from time to time in connection with a particular customer question or complaint or a routine branch inspection by a government agency, neither the State of California, including the State Attorney General, the Structural Pest Control Board, nor the California Environmental Protection Agency have undertaken any investigation of Orkin's termite treatment business or practices in California between October 2003 and the present. By this letter, Orkin confirms that this statement is true since at least January 1, 1999. Similarly, neither the State of Arkansas nor the Arkansas State Plant Board have undertaken an investigation of Orkin's termite treatment business or practices in Arkansas since January 1, 1999, other than routine inspections of branches or inquiries received from customers.

**<u>Plaintiffs' Position and Grounds to Compel on Interr. 15, 16 and Doc. Req. 38, 39 and 40:</u>** Defendants have agreed to expand the time period back to January 1, 1999 for these items. However, as with the other requests where the disagreement turns on the effective dates, Plaintiffs had proposed January 1994 and the Defendants declined. Plaintiffs believe that the relevant time period should be October 1, 1987 to present for the reasons stated above. Further, Plaintiffs have reason to believe that Defendants have been involved in investigations by agencies of other states involving subterranean termite services. Plaintiffs request the Defendants identify any investigation performed by any agency in any state regarding there subterranean termite services. Orkin's policies and procedures are uniform nationwide. These requests seek to discover how mass claims and relief were conducted in cases where Orkin was caught doing similar things alleged here. This will combat Orkin's cries of impossibility, burdensomeness, unmanageability, etc. in the certification process here.

### Discussion and Position on Interrogatories 19, 20
### and Document Request 48

Interrogatory No. 19: Describe in detail and with specificity how, during the RELEVANT TIME PERIOD, DEFENDANTS' WDO SERVICES inspectors (of each classification) were paid and IDENTIFY the relevant time period that each payment method was in use.

Response to Interrogatory No. 19: Defendants object on grounds that this interrogatory is overly broad and calls for the production of irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Among other reasons, the interrogatory is improper because it requests information about inspectors that had no connection or involvement whatsoever with the treatment or inspection of Plaintiffs' property. Subject to and without waiving the foregoing and General Objections, and pursuant to Fed. R. Civ. P. 33(d), Defendants will make available for inspection and copying documents sufficient to identify how inspectors who performed inspections for subterranean termites were compensated between October 2003 and the present.

Interrogatory No. 20: Describe in detail and with specificity how, during the RELEVANT TIME PERIOD, DEFENDANTS' WDO SERVICES branch managers and their corresponding district or region managers, vice presidents, department heads, presidents, and other executives were paid and/or received bonus pay and IDENTIFY the relevant time period that each payment method was in use.

Response to Interrogatory No. 20: Defendants object to this interrogatory on grounds that the request is overly broad and calls for the production of irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Among other reasons, it requests information about employees or executives that had no

connection or involvement whatsoever with the treatment or inspection of Plaintiffs' property. It also seeks to harass Defendants regarding the compensation of more senior officers and executives, which is irrelevant to any issue raised in the Complaint. Subject to and without waiving the foregoing and General objections, Defendants will make available for inspection and copying documents sufficient to identify how termite service and branch managers were compensated between October 2003 and the present.

Document Request No. 48: Produce all DOCUMENTS relating to your responses to Interrogatories 19 and 20.

Response to Document Request No. 48: Subject to and without waiving the General Objections and their objections to Interrogatory Nos. 19 and 20, which are incorporated herein by reference, Defendants will produce documents identified in their Responses to Plaintiffs' Interrogatory Nos. 19 and 20. Defendants object to producing any documents "relating to [their] responses" as such a request is vague, overly broad, and calls for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence.

**Defendants' Further Response After the Meet and Confer to Inter. 19, 20 and Doc. Req. 48:** Plaintiffs requested information about the compensation of various employees. Orkin agreed to provide documents sufficient to show core company criteria regarding compensation programs for termite inspectors, termite service managers, and branch managers. Plaintiffs requested during the meet and confer that Orkin produce compensation information all the way up to the CEO. The parties could not agree on an appropriate compromise, even on an interim basis, and therefore Orkin stands on its objection.

**Plaintiffs' Position and Grounds to Compel on Interr. 19, 20 and Doc. Req. 48:** Defendants have agreed some compensation criteria for local branch employees is discoverable. Plaintiff suggested limiting such documents back to January 1, 1995 for these items. The parties could not reach a compromise. Plaintiffs have reason to believe that Defendants compensation packages were based on such criteria as limiting the amount paid in claims and limiting full protection promised to customers. Further, it is known from other litigation that that this

compensation plan based on limiting claims paid reached all the way to the executive offices. This information is essential for showing a pattern and practice of finding reasons to deny otherwise valid claims and owed services so as to maximize earnings all the way to the top. Proof of such can only be made with the requested documents. It is known that Orkin's pay and bonus structures discourage customer protection services and each level bonus builds and determines bonuses up the chain to the top. This shows an intent not to perform for customers as promised.

## Discussion and Position on Interrogatories 21 and Document Request 35-37

Interrogatory No. 21: IDENTIFY all members of the Class as identified in the complaint whose WDO SERVICE contracts or services were acquired by the DEFENDANTS' during the RELEVANT TIME PERIOD from any person or entity, whether DEFENDANTS' provision of services under any such contracts or issuance of a new contract to such customers is characterized as a purchase or acquisition of their contracts, as a pick-up of any such contracts or services, a buyout, or any other characterization effectively resulting in DEFENDANTS' taking over provision of WDO SERVICES for any such customers

Response to Interrogatory No. 21: Defendants object to this interrogatory on grounds that it is overly broad and calls for the production of irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Among other reasons, the request is improper because any contracts that putative class members entered with termite treatment companies prior to Orkin are not the contracts at issue in this lawsuit. Defendants further object to this interrogatory on the ground that the request is unduly burdensome to the extent that it requires a contract-by-contract, file-by-file review. Subject to and without waiving the foregoing and General Objections, the only acquisitions in California after October 2003 were as follows, listed by name, location, and date of acquisition: (1) Urban Entomology Associates, San Dimas, CA,

January 1, 2006; (2) Pacific Pest Control, San Clemente, CA, March 3, 2006; (3) Providence Pest Control, San Mateo, CA, May 18, 2006; (4) Jim Batchelor Exterminating, San Luis Obispo, CA, November 7, 2006; and (5) Bull's Eye Pest Control (purchase of pest control accounts only), San Diego, CA, August 31, 2007.

Document Request No. 35: Produce all DOCUMENTS relating to DEFENDANTS' acquisition, during the RELEVANT TIME PERIOD, of the WDO SERVICE contracts of any member of the Class as identified in the complaint from any person or entity, whether DEFENDANTS' provision of services under any such contracts or issuance of new contracts to such customers is characterized as a purchase or acquisition of their contracts, as a pick-up of any such contracts or services, or other characterization effectively resulting in DEFENDANTS' taking over provision of WDO SERVICES for any such customers.

Response to Document Request No. 35: Defendants object to this request because it is overly broad and calls for the production of irrelevant documents not reasonably calculated to lead to the discovery of admissible evidence. Among other reasons, the request is improper because (1) any customers Orkin acquired from another company would not be proper members of the class (and, even if they were, their identities are completely irrelevant prior to class certification); and (2) it covers more than a twenty year-period and is not limited to the sales of treatment for subterranean termites. Defendants further object that the request is unduly burdensome to the extent that it requires a contract-by-contract review.

Document Request No. 36: Produce all DOCUMENTS and things relating to policies, practices and procedures during the RELEVANT TIME PERIOD for provision of WDO SERVICES to properties whose WDO SERVICE contracts were acquired or otherwise received from any other entity or person.

Response to Document Request No. 36: Defendants incorporate by reference their objections to Document Request No. 35 as if set forth fully herein. In addition, Defendants object to this request because the phrase "things relating to" is vague and ambiguous, calling for speculation.

<u>Document Request No. 37:</u> Produce all purchase or acquisition agreements including, but not limited to, all attachments or exhibits or references related thereto of the WDO SERVICE companies and other structural pest control operators who previously serviced the relevant Class members identified in response to item 76 (including but not limited to purchases or acquisition of DEFENDANTS' licensees or franchisees) entered into by DEFENDANTS.

<u>Response to Document Request No. 37:</u> Defendants incorporate by reference their objections to Document Request Nos. 35 as if set forth fully herein. (Defendants assume that reference to "Item 76" is meant to be document request 36; if that assumption is incorrect, the request is vague and calls for speculation).

**Defendants' Further Response After the Meet and Confer to Inter. 21 & Doc. Req. 35-37:** Plaintiffs requested information and documents regarding contracts Orkin purchased from other companies. Orkin has already identified the names of the companies from which it purchased other contracts. Additional information is irrelevant because the terms of termite contracts entered into by other companies, and their performance under those contracts cannot be within the scope of the class; the named plaintiffs, who contracted only with Orkin, do not have standing to represent customers of other companies. Plaintiffs contend otherwise. Given the parties' disagreement, Orkin stands on its objections.

**Plaintiffs' Position and Grounds to Compel on Interr. 21 and Doc. Req. 35-37:** The information sought in these requests is needed to show how Defendants evaluated customers' property after purchasing or otherwise obtaining contracts from other termite service providers and the criteria for establishing them as customers of the Defendants either through agreement or novation of the existing contract.  This includes policies and procedures for determining the appropriate retreatment service need at the property to provide protection lacking from previous providers.  This will also show who was liable for faulty or incomplete service after the transaction which may bar certain customers from participating in this class action.   Routinely, however, Orkin will issue its own contracts to substitute for the previous provider's.  Orkin will

then not provide its promised protection, just as it does in relation to other class members who began with Orkin.  Instead, Orkin will stand on previous services of the other provider with no procedure to assure those were proper.

### Discussion and Position on Document Requests 3, 27

Document Request No. 3: Produce exemplars of all form documents available for use by DEFENDANTS during the RELEVANT TIME PERIOD in the sale of and the subsequent provision of WDO SERVICES, whether or not actually used, and IDENTIFY the RELEVANT TIME PERIODS that any such documents were in use, were changed, or were available for use by DEFENDANTS. (Footnote from original omitted.)

Response to Document Request No. 3: Defendants object to this request because it is overly broad and calls for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Among other reasons, it seeks documents over a twenty-year period, is not limited to subterranean termites, and seeks documents "whether or not actually used." Defendants further object that the request to "identify" certain time periods is an improper document request. Subject to and without waiving the foregoing and General Objections, Defendants agree to produce (1) contracts, including graphs, with the named Plaintiffs; (2) form subterranean contracts used in California subsequent to October 2003; and (3) marketing materials used at the point-of-sale in California subsequent to October 2003.

Document Request No. 27: Produce all form DOCUMENTS used, or available for use during the RELEVANT TIME PERIOD by DEFENDANTS during the sales process for issuance of WDO SERVICE contracts including but not limited to all advertising materials and IDENTIFY the RELEVANT TIME PERIODS during which such form DOCUMENTS were in use, were changed, were effective, or were available for use.

Response to Document Request No. 27: Defendants object to this request because it is overly broad and calls for irrelevant information not reasonably calculated to lead to the

discovery of admissible evidence. Among other reasons: (1) this request seeks information about advertisements that Plaintiffs testified on May 20 and 22, 2008 that they never saw or heard; therefore, they have no standing to assert claims based on such advertisements; and (2) it seeks documents over a twenty year-period and is not limited to the sales of treatment for subterranean termites. Subject to and without waiving the foregoing and General Objections, Defendants will make available for inspection and copying sales brochures for subterranean termite treatments, including monitoring and baiting, that were used in California between October 2003 and the present.

**Defendants' Further Response After the Meet and Confer to Doc. Req. 3, 27:**

Plaintiffs asked for exemplars of various documents given to customers, which Orkin agreed to produce from October 2003 to the present and, after conferring with plaintiffs' counsel, agrees to produce from the expanded period of January 1, 1999 to June 1, 2008. The parties' disagreement turns largely on the date parameters.

**Plaintiffs' Position and Grounds to Compel on Doc. Req. 3, 27:** The disagreement on the appropriate responses to these request turns on the effective date range. Plaintiffs believe that the relevant time period begins on October 1, 1987. These documents will provide the common representations made to the class.

**Discussion and Position on Document Request 6**

Document Request No. 6: Produce all DOCUMENTS relating to internal audits (whether done in whole or in part by DEFENDANTS' employees, agents, or subcontractors or others) of DEFENDANTS' WDO SERVICES and to DEFENDANTS' policies, practices, procedures or from DOCUMENTS regarding internal audits of DEFENDANTS' WDO SERVICES during the RELEVANT TIME PERIOD and actions taken in response thereto including, but not limited to: determining whether WDO services at structures serviced by DEFENDANTS satisfied any legal requirements, including but not limited to, product label

requirements, California regulatory requirements, and/or DEFENDANTS' internal standards or requirements; whether details of WDO services were recorded properly; whether inspections were performed properly; whether graphs were drawn properly and effectively; and whether and to what extent customers were informed of all material facts they needed to know to make informed decisions related to the protection of their properties from WDOs. IDENTIFY the RELEVANT TIME PERIODS that any such policies, practices, procedures or form DOCUMENTS were effective, were changed, were in use, or were available for use. This response should include but not be limited to DOCUMENTS relating to the "Quality Assurance Program," the "Retreatment Credit Program," Operation Zero Termites," individual branch audits, individual region or district audits, and any other similar programs.

Response to Document Request No. 6: Defendants object to this request because it is overly broad and calls for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Among other reasons, the information sought covers over twenty years and is not limited to subterranean termites. The request is also ambiguous because it is not clear what audits Plaintiffs are referring to and therefore calls for speculation. To the extent the request seeks documents reflecting Defendants' responses to such audits, it is not reasonably calculated to lead to the discovery of admissible evidence because, under Federal Rule of Evidence 407, evidence of subsequent remedial measures is inadmissible. Defendants further object that the request to "identify" when certain documents were effective is an improper document request.

**Defendants' Further Response After the Meet and Confer to Doc. Req. 6:** On certain occasions, branch managers or service managers perform a quality audit of a particular job. Those audits are maintained in the customer files, to the extent they exist. The named plaintiffs do not appear to have been subject to any such branch audit. It would be unduly burdensome to search each customer file to obtain other branch audits related to jobs performed at the properties of the putative class members. Additionally, the Termite Compliance group (Chris Gorecki's group) has conducted quality assurance audits at certain times. To the extent that any of these

audits reviewed work done at the properties of the named plaintiffs, we will agree to produce such audits (if they exist). To the extent that plaintiffs are requesting audits not related to the named plaintiffs' property, Orkin stands on its objections.

**Plaintiffs' Position and Grounds to Compel on Doc. Req. 6:** At this time Plaintiffs are requesting information related to the quality assurance protocol and procedure for conducting branch audits, not audit to specific customer files.   As such, it would not be overly broad and burdensome to identify branch audits conducted by Chris Gorecki's group for the California branches or national audits concerning uniform policies which include California.  This information is relevant in that it will show knowledge of treatment deficiencies and deficient treatment methods and protocol and Orkin's decision to bury it, partially remedy it, or turn it into an opportunity to cancel or change contracts to Orkin's profit benefit class-wide.  Plaintiffs believe that Defendants knew of shortcomings in their policies and practice and failed to make any meaningful attempt to rectify them.


### Discussion and Position on Document Requests 17, 18, and 19

Document Request No. 17: Produce all DOCUMENTS relating to DEFENDANTS' policies, practices, procedures, guidelines, standards or form documents used or available for use during the RELEVANT TIME PERIOD in tracking purchase of termiticide chemicals and "bait" stations, systems, or station inserts used at structures under a WDO SERVICE bond or contract, and IDENTIFY the RELEVANT TIME PERIODS that any such policies, practices, procedures, guidelines, standards or form documents were effective, were in use, were changed, or were available for use.

Response to Document Request No. 17: Defendants object to this request because it is overly broad and calls for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Among other reasons, the information sought covers over twenty years and is not limited to subterranean termites. Moreover, documents regarding aggregate purchases, without any limitation to a geographic location consistent with Plaintiffs'

Complaint, are irrelevant. Defendants state that the only documentation available is the customer files, which contain the type and amount of chemical applied that was generated from the tank by flometer. Accordingly, this request is unduly burdensome in that it requires a file-by-file review of customer files. Moreover, Defendants object on the ground that the request to "identify" when certain documents were effective is an improper document request.

Document Request No. 18: Produce all DOCUMENTS relating to DEFENDANTS' policies, practices, procedures, guidelines, standards or form DOCUMENTS used or available for use during the RELEVANT TIME PERIOD in tracking the use of termiticide chemicals and "bait" stations, systems, or station inserts at structures (including but not limited to identification of the product, the amount and concentration used, where the product was applied, and the rate at which it was applied), and IDENTIFY the RELEVANT TIME PERIODS that any such policies, practices, procedures, guidelines, standards or form documents were effective, were in use, were changed, or were available for use.

Response to Document Request No. 18: Defendants incorporate by reference herein their Response to Document Request No. 17.

Document Request No. 19: Produce all DOCUMENTS and things relating to DEFENDANTS' policies, practices, procedures, guidelines, standards or form documents used during the RELEVANT TIME PERIOD in controlling its inventory of termiticide chemicals and "bait" stations, systems, or station inserts, including but not limited to: determining which of these products to purchase and how much; how these products are checked out for use at a structure, how products checked out but not used at a structure are checked back in, how it is determined whether the proper amount of product was used, and whether the proper amount of product was returned, and IDENTIFY the RELEVANT TIME PERIODS that any such policies, practices, procedures, guidelines, standards or form documents were effective, were in use, were changed, or were available for use.

Response to Document Request No. 19: Defendants object that the phrase "controlling inventory" and "things" (as used in the context of this document request) is vague,

calling for speculation. Defendants further object to this request because it is overly broad and calls for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Among other reasons, the information sought covers more than twenty years and is not limited to subterranean termites, and documents regarding aggregate purchases, without any limitation to a geographic location consistent with Plaintiffs' Complaint, are irrelevant. Moreover, Defendants object on the ground that the request to "identify" when certain documents were effective is an improper document request.

**Defendants' Further Response After the Meet and Confer to Doc. Req. 17, 18, 19:** Plaintiffs requested documents regarding termiticide usage. Orkin explained that the records of termiticide usage are found in individual customer files and that such files are irrelevant prior to class certification. Orkin will agree, however, to produce Monthly Material Inventory Sheets for the past three years (which is the document retention period for such documents) for the branches that serviced the named plaintiffs' properties.

**Plaintiffs' Position and Grounds to Compel on Doc. Req. 17, 18, 19:**  These requests are relevant to show how the purchased chemicals and baits were tracked and seek policies and procedures for inventory and quality control.  Plaintiff believes that this will show that the quantity of chemicals and materials purchased does not comport with the required amount of chemicals needed to provide the agreed to services as shown by label directions and common foundation sizes.  One example (NOT a limitation on responses) is that monthly branch Material and Supply (M&S) reports, kept by computer and on paper in Atlanta and branches, keep detailed product purchase records.  Orkin computer records and State monthly termite treatment reports show original treatment product amounts which may be searched and printed as reports. Comparing these items will show Orkin never even bought enough product to fulfill its promises.


**Discussion and Position on Document Request 22 and 34**


Document Request No. 22: Produce all DOCUMENTS (including but not limited to memoranda, data, research, cost-benefit analyses, surveys, studies, reports, etc.) relating to

decisions made by or reviewed by any officer, director, or corporate department head of either DEFENDANT related to or concerning whether DEFENDANTS would chemically treat, chemically retreat, or service "bait" systems at properties of customers found to have or suspected of having an improper initial treatment or "bait" WDO SERVICES according to any standards (approved label, regulations, company policy or other).

<u>Response to Document Request No. 22:</u> Defendants object to this request because the phrases "improper initial treatment" and "'bait' WDO SERVICES according to any standards" are vague and ambiguous, calling for speculation. The request is also overly broad and calls for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Among other reasons, the request is not limited to subterranean termites, or the relevant class period. More generally, the request as a whole is so vague and overly broad that it does not fairly apprise Defendants of the particular documents sought.

<u>Document Request No. 34:</u> Produce all DOCUMENTS and things relating to DEFENDANTS' policies, practices and procedures during the RELEVANT TIME PERIOD for determining the WDO SERVICE contracts, including the reasons for issuance of limited duration contracts as opposed to lifetime protection contracts, and IDENTIFY the RELEVANT TIME PERIODS that any such policies, practices and procedures were effective, were in use, were changed, or were available for use.

<u>Response to Document Request No. 34:</u> Defendants object to this request because the phrase "things relating to," and the term "things" (in the context of this document request) are vague and ambiguous, calling for speculation. Defendants further object because the request is overly broad and seeks irrelevant documentation because, among other reasons, it seeks documents over a twenty year-period and is not limited to the sales of treatment for subterranean termites.

**<u>Defendants' Further Response After the Meet and Confer to Doc. Req. 22:</u>** This request seeks a virtually unlimited number of documents that could not be identified and produced without extensive interviews with an unspecified number of Orkin employees.

Plaintiffs would not agree to any limitations on the request. As such, Orkin stands on its objections.

**Defendants' Further Response After the Meet and Confer to Doc. Req. Doc. Req. 34:** Orkin still does not understand what plaintiffs are seeking in this request which asks for, in relevant part, "DOCUMENTS ... relating to DEFENDANTS' policies, practices and procedures for determining the duration of WDO SERVICE contracts." Therefore, Orkin stands on all of its objections.

**Plaintiffs' Position and Grounds to Compel on Doc. Req. 22, 34:** This request is relevant to show how the Defendants evaluated if they needed to re-apply chemicals or modify agreements to use baits with chemicals. This goes beyond the manuals offered by Defendants and includes studies, research, data and/or reports done by either defendants or collected form third parties that the Defendants relied on when making these decisions. This includes such materials that Defendants analyzed when it was discovered that the terms of the contracts, including but not limited to lifetime guarantees, outlived the effective life of the chemicals applied to customers' properties. This information shows corporate knowledge of failures and decisions to con customers into spending more money for less coverage while Orkin saved money by not fulfilling promises already paid for. For an example of a similar Rollins/Orkin cost-benefit study, see *Orkin v Federal Trade Comm'n,* 849 F.2d 1354 (11th Cir. 1988) (Orkin & Rollins plan and internal studies to secretly change or ignore lifetime customer contract terms so that Orkin could increase fixed, lifetime renewal fees).

**Discussion and Position on Document Requests 28, 32, and 33**

Document Request No. 28: Produce all DOCUMENTS and things relating to DEFENDANTS' factors or criteria used during the RELEVANT TIME PERIOD to determine whether or not it would place a property under a WDO SERVICE contract, and IDENTIFY the RELEVANT TIME PERIODS that any such factors or criteria were effective, were in use, were changed, or were available for use.

<u>Response to Document Request No. 28:</u> Defendants object to this request because it is overly broad and irrelevant to the extent it seeks the production of "things." Defendants further object to the terms "things" and "factors" (in the context of this document request) as vague and ambiguous, calling for speculation. Moreover, Defendants object that the request to "identify" when certain documents were effective is an improper document request. Defendants object to this request because the phrase "things relating to DEFENDANTS' factors or criteria," is vague and ambiguous, calling for speculation. Subject to and without waiving the foregoing and General Objections, Defendants agree to produce the guarantee matrices found in Defendants' manuals available for use in California subsequent to October 2003.

<u>Document Request No. 32:</u> Produce all DOCUMENTS and things relating to all factors or criteria considered by DEFENDANTS during the RELEVANT TIME PERIOD in determining whether a structure qualifies or does not qualify to be placed under a repair bond or contract for WDO SERVICES, and IDENTIFY the RELEVANT TIME PERIODS that any such policies, practices, procedures, guidelines or standards were effective, were in use, were changed, or were available for use.

<u>Response to Document Request No. 32:</u> Defendants object to this request because the phrase "things relating to all factors or criteria," and the terms "bond" and "things" (in the context of this document request) are vague and ambiguous, calling for speculation. Defendants further object because the request is overly broad and seeks irrelevant documentation because, among other reasons, it seeks documents over a twenty year-period and is not limited to the sales of treatment for subterranean termites. Moreover, Defendants object that the request to "identify" when certain documents were effective is an improper document request. Subject to and without waiving the foregoing and General Objections, Defendants will make available for inspection and copying at a mutually agreeable time and place guarantee matrices that have been used in California since October 2003 in connection with the sale of subterranean termite jobs.

POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL

Document Request No. 33. Produce all DOCUMENTS and things relating to all factors or criteria considered by DEFENDANTS during the RELEVANT TIME PERIOD in determining whether a structure qualifies or does not qualify to be placed under a retreatment bond or contract for WDO SERVICES, and IDENTIFY the RELEVANT TIME PERIODS that any such policies, practices, procedures, guidelines or standards were effective, were in use, were changed, or were available for use.

Response to Document Request No. 33: This request is substantially identical to Document Request No. 32 (repair v. re-treatment guarantees). Defendants therefore incorporate by reference their objections to Document Request No. 32 as if set forth fully herein.

**Defendants' Further Response After the Meet and Confer to Doc. Req. 28, 32, 33:** Plaintiffs requested information about the criteria used by Orkin to determine what type of guarantee a property may qualify for. As per its document responses and this letter, Orkin has already produced the guarantee matrices found in Orkin's manuals (e.g., Termite Treatment Expectation Manuals) in effect between January 1, 1999 and June 1, 2008. It is unclear whether plaintiffs had reviewed these documents at the time of the meet and confer. Orkin believes these documents sufficiently respond to Document Requests 28, 32, and 33.

**Plaintiffs' Position and Grounds to Compel on Doc. Req. 28, 32, and 33:** As with other requests, this dispute largely turns on the effective date range. For the reasons stated above, Plaintiffs believe that the relevant time period begins on October 1, 1987. Additionally, "things" includes items such as demonstrative aids such as training videos. Additionally, these requests seek to identify factors and criteria that Defendants required and/or encouraged employees to consider as a condition to placing under a subterranean termite service agreement, e.g. stucco below grade. These requests are aimed at determining which properties qualify for a "repair" contract or a "re-treat only" contract or other various types of contract that would be considered a hybrid of the two.

**Discussion and Position on Document Request 30**

POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL

<u>Document Request No. 30:</u> Produce all DOCUMENTS and things relating to DEFENDANTS' policies, practices, procedures, guidelines, standards or form documents during the RELEVANT TIME PERIOD regarding determination of charges or fees to customers for WDO SERVICES performed after the initial placement of the structure under contract, and IDENTIFY the RELEVANT TIME PERIODS that any such policies, practices, procedures, guidelines, standards, or form documents were effective, were in use, were changed, or were available for use.

<u>Response to Document Request No. 30:</u> Defendants object to this request because it is overly broad, irrelevant, and seeks the disclosure of confidential or proprietary knowledge and/or business or commercial information. In particular, how Defendants determine their prices is completely irrelevant to any claims in the Plaintiffs' Complaint and is irrelevant to any issue for class certification or liability. Moreover, the request seeks documents over a twenty year-period and is not limited to the sales of treatment for subterranean termites. Defendants further object that the request to "identify" when certain documents were effective is an improper document request. Defendants further object to this request on grounds that the phrase "things relating to" is vague and ambiguous, calling for speculation. Subject to and without waiving the foregoing and General Objections, Defendants agree to produce the rate cards available for use in California subsequent to October 2003, subject to a protective order and confidentiality agreement.

**Defendants' Further Response After the Meet and Confer to Doc. Req. Doc. Req. 30:** Orkin has already agreed to produce rate cards, which Orkin believes sufficiently respond to Document Request 30.

**Plaintiffs' Position and Grounds to Compel on Doc. Req. 30:** In addition to the rate cards that Defendants have agreed to produce, this request also seeks common information concerning customer charges that occur after the initiation of the original contract, for example, situations such as changing contracts, booster treatments, and/or renewals. This is relevant in

determining if it was financially practical in terms of cost for Defendants to re-treat or re-apply chemicals if this service would cost more than they were charging.

**Discussion and Position on Document Requests 45 and 46**

Document Request No. 45: Produce all DOCUMENTS relating to DEFENDANTS' policies, practices, and procedures during the RELEVANT TIME PERIOD for assuring that each of its licensed employees and agents "is qualified in the use and understanding of... the theory and practice of [the business of a Brach 3 operator/licensee (WDO SERVICES)]" pursuant to Calif. Bus. & Prof Code section 8565.

Response to Document Request No. 45: Defendants object to this request because it is overly broad and seeks irrelevant documents not reasonably calculated to lead to the discovery of admissible evidence because, among other reasons, it seeks documents over a twenty year-period and is not limited to subterranean termites.

Document Request No. 46: Produce all DOCUMENTS relating to DEFENDANTS' policies, practices, and procedures during the RELEVANT TIME PERIOD for assuring its license employees and agents demonstrate to the California Structural Pest Control Board the proper understanding of the topics listed at Calif. Bus. & Prof. Code 8565.5(c).

Response to Document Request No. 46: Defendants object because the request is overly broad and seeks irrelevant documents not reasonably calculated to lead to the discovery of admissible evidence because, among other reasons, it seeks documents over a twenty year-period and is not limited to subterranean termites.

**Defendants' Further Response After the Meet and Confer to Doc. Req. 45, 46:**

Plaintiffs seek documents regarding Orkin's compliance with Cal. Bus. & Prof. Code 8565 generally and 8565(c) in particular. Defendants objected. Section 8565 lists the topics upon which the Structural Pest Control Board shall determine that a license applicant is qualified. Section 8565(c) lists the board-approved courses that an applicant for a Branch 3 operator's

POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL

license is required to pass. Given that there has been no allegation that any Orkin employee did not meet these requirements, Orkin stands on its objections.

**Plaintiffs' Position and Grounds to Compel on Doc. Req. 45, 46:**  As with other requests, this dispute partially turns on the effective date range.  For the reasons stated above, Plaintiffs believe that the relevant time period begins on October 1, 1987.  This is request is important to show if Defendants complied with the regulations and will show proof of the allegations in the complaint particularly negligent training, supervision, retention, and negligence *per se*.  Orkin misreads these regulations.  The State places these particular training burdens on Orkin.  If Orkin does not assure compliance and is operating in violation of applicable regulations, then it has breached various duties owed to the members of the putative class, who are protected consumers under these laws.

//

//

//

Dated: September 9, 2008

/s/ H. Tim Hoffman
H. Timothy Hoffman
Attorney for Plaintiffs

POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL

63