1

2

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

3

4

5

RONALD KRZYZANOWSKY AND
LEANA KRZYZANOWSKY, on behalf
of themselves and all others similarly
situated, *et al.*,

6

        Plaintiffs,

7

    v.

8

9

ORKIN EXTERMINATING
COMPANY, INC., *et al.*,

        Defendants.

10

11

No.  C 07-05362 SBA

**ORDER**

[Docket No. 84]

12

**REQUEST BEFORE THE COURT**

13

14

15

16

17

18

19

20

21

        Before the Court is a Motion for Summary Judgment (the "Motion") [Docket No. 84] filed by

defendants Orkin Exterminating Company, Inc. and Rollins, Inc., an Opposition to the Motion (the

"Opposition") [Docket No. 99] filed by plaintiffs Ronald and Ileana Krzyzanowski, and a Reply in

Support of the Motion (the "Reply") [Docket No. 107] filed by defendants.  The parties dispute whether

the Krzyzanowskis have standing to pursue various California tort and statutory consumer claims

against defendants, allegedly arising from defendants' failure to provide pest control services as

promised or as mandated by law.  Defendants have moved for summary judgment under Federal Rule

of Civil Procedure 56 on the grounds that the Krzyzanowskis' claims are time barred.  Alternatively,

defendants request the dismissal of certain claims and/or the striking of certain allegations.

22

23

24

        The Court finds this matter appropriate for resolution without a hearing under Federal Rule of

Civil Procedure 78(b), and for the reasons discussed below GRANTS in part and DENIES in part the

Motion as follows:

25

26

27

28

        (1)        The Court GRANTS summary judgment on the Kryzyzanowskis' claims as time barred,

to the extent predicated on Orkin's conduct in 1999 and 2000 related to the 1999 contract; the Court

DENIES summary judgment on the Kryzyzanowskis' claims, to the extent predicated on Orkin's

conduct from 2002 through 2007 related to the 2002 contract;

(2)      The Court DISMISSES the Kryzyzanowskis' claim for Equitable Relief, but with leave to amend;

(3)      The Court DENIES summary judgment on the Kryzyzanowskis' claim for breach of duty to warn, for negligent training and supervision, and for false advertising under § 17500 *et seq*. of the California Business and Professions Code;

(4)      The Court GRANTS summary judgment on the Kryzyzanowskis' requests for injunctive relief under § 17203 and § 17535 of the Business and Professions Code;

(5)      The Court GRANTS summary judgment on the Kryzyzanowskis' claims to the extent predicated on paragraph 25 of their complaint [Docket No. 1]; and

(6)      The Court DENIES summary judgment on the allegations raised in paragraph 38(c), (e), (f), (k), (l), (n), (v), and (w) of the Kryzyzanowskis' complaint; the Court GRANTS summary judgment on the allegations raised in paragraph 38(g), (h), (o) through (q), (t), and (u) of the Kryzyzanowskis' complaint.

## BACKGROUND

### I.      Factual Developments

Plaintiffs, the Kryzyzanowskis, are married and co-own a house in Union City, California. They are laypersons and have no expertise or knowledge regarding termites or how a pest control service should properly protect a residence from them.

In 1999, the Kryzyzanowskis found a termite mud tunnel running partially up a Sheetrock wall, in a room near their garage.  After considering two other companies, Terminix and Hydrex, Mr. Krzyzanowski called defendant Orkin Exterminating Company, Inc.[1] ("Orkin").  An Orkin agent came out, inspected the home, verified there were active termites, and scheduled a later inspection and sales presentation.  At the second visit, an Orkin agent, based on the inspections, provided a treatment plan and a price quote.  The agent told Krzyzanowski that Orkin had the best training, high standards, and quality practices, and had expertise in termite eradication, control, inspection, and protection.

---

[1]      Defendant Orkin is owned by co-defendant Rollins, Inc.

The agent gave him a brochure and a contract.  Krzyzanowski read them.  The agent proposed a combination "bait" system plus a traditional chemical barrier.  The contract states that "[s]ervice includes traditional treatment to critical and infested areas, plus Bait System installation and monitoring as specified by Orkin."  Docket No. 99, Ex. "5."  Under the title, "Complete Treatment for Your Entire Home — Anything less and Your Home Is *Still* at Risk," Docket No. 86, Ex. "G" at 7 (emphasis in original), the brochure states that "ORKIN Offers Five *Strategic Zones* of Protection Against Termite Entry[,]" *id*. (emphasis in original).  It claims that spot treatments alone are insufficient, and it says that Orkin will treat (1) the exterior slabs or trenches and around the foundation; (2) inside any crawl spaces; (3) inside any hollow blocks of the foundation; (4) any exposed wood in contact with the foundation; and (5) with foam, critical areas in concrete, e.g., around pipes, over debris, and around settlement cracks.  *Id.*  It represents that the slab is uniformly protected by injections every 12 inches.  *Id.* at 12.  The brochure claims that this system provides a "comprehensive defense."  *Id.*  at 7.  And it notes that termaticides break down in five to seven years.  *Id.* at 3.

Krzyzanowski asked the agent how the bait system worked.  Krzyzanowski understood the agent to say that the stations used a chemical, FirstLine, to lure in termites in to eat it, which they then bring back to the colony, which kills the colony.

Orkin's presentation and brochure impressed Krzyzanowski, and having no reason to question it, he believed Orkin's plan was the proper course of action to take.  Based on the documents and the agent's representations, Krzyzanowski believed that Orkin would treat and protect his whole house, and signed the contract on July 6, 1999.  Krzyzanowski paid Orkin $2,065.20, including interest, for services related to this contract.  Orkin agents then provided treatment to the Krzyzanowski's home and installed monitoring stations around its perimeter.  Krzyzanowski asked one of Orkin's agents, "Does this take care of it?  Is my problem coming back and everything else?"  Docket No. 99, Ex. "A" at 58.  The agent replied, "No you are good to go.  It's taken care of."  *Id.*  The contract was renewable annually for up to five years.  Krzyzanowski let it lapse as of September 18, 2000.

The Krzyzanowskis had no problems with termites until 2002, when they discovered another

mud tunnel in the same area as in 1999.  Krzyzanowski called Orkin because it was "familiar with [his] house, knew the whole layout, knew everything, and [he] expect[ed] them to tell [him] what was wrong and why this was happening again."  Docket No. 86, Ex. "A" at 27.  At his deposition, he testified regarding his reaction to discovering the mud tunnel.

> Q: At this point, did you think that [Orkin] had done something wrong?
>
> A: I don't know.  I can't answer that.
>
> Q: You just know that the termites came back?
>
> A: That's all.

Docket No. 86, Ex. "A" at 49.

> Q: Is it fair to say that you first reached the conclusion that Orkin had done something wrong that you were mad about in or around 2002 when the termites came back?
>
> A: I was angry, frustrated to have to go through this again, and I signed a contract with Orkin, and by signing that contract, I thought they should have did everything possible to live up to what was in their brochures, what was said to me, so.
>
> Q: And when those termites came back in 2002, you thought that Orkin hadn't lived up to its promises, didn't you?
>
> A: They came back.  They didn't live up to their promises, so.
>
> Q: So your view is that in 2002, you knew Orkin didn't – had not lived up to its promises, in your view.
>
> A: Correct.

*Id.* at 54-55.

An Orkin agent came out to the house.  Krzyzanowski again received a contract and a brochure.  The contract states that "[s]ervice includes liquid treatment to critical and infested areas as specified by Orkin, plus Bait System installation and monitoring as specified by Orkin."  Docket No. 99, Ex. "6."  The brochure states that "Orkin's Directed Liquid Plus Bait & Monitoring Service offers you relief from termites that 'bait-only' services lack.  The Directed Liquid treatments are applied to critical entry points and identified areas of infestation and may be a combination of liquid,

borates, and foam." *Id.*, Ex. "4" at 4.  It also states that "monitoring stations" will be placed around a home, and when a station detects termites, it will be replaced with a "bait station." *Id.*  "Termites then ingest the bait and share it with other termites, leading to colony control."  And, it states that "Orkin's Liquid Treatments give you relief from the termites you have now, plus protection from future infestations.  They are applied on the inside, outside and within your home's foundation, providing a protective area around your home." *Id.* at 5.

Based on the brochure, which was more informative than the 1999 one, Krzyzanowski was able to better follow the sales presentation, and was satisfied that he was hiring the right company with the right program.  He signed the contract on October 16, 2002.  He paid $2,330 for services related to this contract.[2]  Orkin agents then provided treatment to the Krzyzanowskis' home and installed monitoring stations around its perimeter.  Krzyzanowski asked one of Orkin's technicians, "Is my problem going to be solved now and everything?"  Docket No. 86, Ex. "A" at 59.  The agent answered, "It should be taken care of." *Id.*  Termites returned in December 2002, however, for which Orkin re-treated.  Orkin re-treated again in June 2003.  There have been no problems with termites since.

The 2002 contract was renewable annually for $300 per year, for up to ten years.  In April 2007, Krzyzanowski contacted his current attorneys, after seeing an advertisement in a newspaper, the Catholic Voice, regarding alleged fraud in pest control services.  He was allegedly curious about whether Orkin had performed its services properly.  The Krzyzanowskis filed this suit in October 19, 2007, and Mr. Krzyzanowski let the 2002 contract lapse in December 2007.

## II.    Procedural Developments

The Krzyzanowskis sued Orkin in diversity for (1) breach of contract and warranty; (2) equitable relief for breach of the implied covenant of good faith and fair dealing;[3] (3) breach of duty to warn; (4) negligent training, supervision, and retention; (5) false advertising under § 17500

---

[2]      The parties do not indicate to what extent, if any, this includes subsequent renewal fees.

[3]      As discussed *infra* in part II.A of the Analysis, it is unclear whether the Krzyzanowskis plead this claim solely as a breach of the implied covenant of good faith and fair dealing or as part of a broader claim for injunctive relief predicated on multiple wrongful acts.  For purposes of the analysis in part II, however, it will suffice to treat it as the former.

1     *et seq.* of the California Business and Professions Code; (6) unfair competition under California's

2     Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; and (7) a violation of

3     California's Consumer Remedies Act (the "CCRA"), § 1750 *et seq.* of the California Civil Code.

4     *See* Docket No. 1.  They have sued on behalf of themselves and all others similarly situated, but no

5     class action has yet been certified.

6          The Krzyzanowskis' expert who was, inter alia, Orkin's Technical Director from 2002

7     through 2005, testified that Orkin never provided a "traditional treatment to critical and infested

8     areas" as these terms are understood in the professional community.  Docket No. 99, Bello Decl., ¶

9     9.  He further testified that Orkin never revealed this fact to Mr. Krzyzanowski, nor would this fact

10     be within the knowledge of a non pest-control professional.  *Id.*

11          He testified that Orkin failed to apply a chemical barrier to all "critical areas," and never

12     deployed actual "bait" stations.  *Id.* ¶ 12.  Specifically, he testified that a traditional barrier involves

13     a continuous barrier at the foundation.  *Id.* ¶ 26.  He also testified that a proper 1999 treatment would

14     have required 317 gallons of Prelude, but Orkin only applied 23 gallons, for a cost of $75.  *Id.* ¶ 13.

15     He also testified that while at Orkin, he learned that this practice of "limited" spot treatments was

16     used for "bait plus liquid" contracts, a practice also known in the pest control industry.  *Id.* ¶ 14.  In

17     2002 and 2003, Orkin only applied a *total* of 104 gallons of Prelude, when 317 gallons were needed.

18     *Id.* ¶ 15.  He opined that this failure to apply sufficient chemical was the likely cause of continued

19     infestations.  *Id.* ¶ 16.

20          He testified that in 1999, Orkin tested offering bait-and-liquid contracts for a price

21     comparable to what competitors were charging for liquid-only or for bait-only contracts, thus

22     making it appear that Orkin was offering a two-for-one deal.  *Id.* ¶ 26.  He also testified that the

23     statements in the 1999 brochure were false, in that Orkin's proposed five-part treatment would not

24     provide "complete" treatment for a home.  *Id.* ¶ 11.

25          Further, he testified that by 1999 it was widely known and documented in the pest control

26     industry that the FirstLine "baiting" system was ineffective a preventing or eradicating termites.  *Id.*

27     ¶¶ 11, 17-18.  Orkin used this system, however, as it was the cheapest available, and its

28     manufacturer placed no restrictions on its use by Orkin.  *Id.* ¶ 18.  He also testified that the term

"bait" station is misleading, as the station contains no luring product, just wood and FirstLine.  *Id.* ¶ 19.  If a termite randomly foraging for food stumbles across a station, it will take the FirstLine back to the colony, but at best, as its manufacturer estimates, possibly eight percent of a colony may be killed.  *Id.* ¶ 21.  This is a death rate similar to that caused by natural predators, such as ants, and does little to impact a colony's population over time.  *Id.*  Further, in 1999 Orkin only placed 12 three-inch wide stations around the Krzyzanowski's 176-foot perimeter.  *Id.* ¶ 24.

He testified that the 2002 brochure was misleading in that the protection offered was not "comprehensive," and that FirstLine will not "control" a colony.  *Id.* ¶ 29 n.10.  He also testified that Orkin's 2002 services were not intended to meet and did not meet the claims made in its brochure regarding its Directed Liquid Plus Bait & Monitoring Service.  *Id.* ¶ 27.

He also testified that Orkin failed to follow its own quality control program, discussed in the 1999 and 2002 brochures, which included Quality Assurance Surveys, designed to guide workers and managers to avoid recurring infestation by correcting improper prior treatments.  *Id.* ¶ 28.  *None of the surveys in Krzyzanowski's file have been completed.*  *Id.*

He testified that Orkin provided *partial* treatments in 1999 and 2002, not *thorough* treatments as represented in its brochures.  *Id.* ¶ 29.  He also testified that Orkin's inspections of the home and the stations were below proper standards.  *Id.* ¶ 30.  And, he testified that industry insiders know consumer cannot detect whether services are performed correctly or products perform as promised, even if infestations continue or reoccur.  *Id.* ¶ 12.

On December 2, 2008, Orkin filed the Motion for Summary Judgment (the "Motion") [Docket No. 84] before the Court.

## LEGAL STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The party moving for summary judgment must demonstrate that there are no genuine issues of material fact.  *See Horphag v. Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

1   (1986); *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  An issue is "material" if

2   its resolution could affect the outcome of the action.  *Anderson*, 477 U.S. at 248; *Rivera*, 395 F.3d

3   at 1146.

4          In responding to a properly supported summary judgment motion, the non-movant cannot

5   merely rely on the pleadings, but must present specific and supported material facts, of significant

6   probative value, to preclude summary judgment.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith*

7   *Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th

8   Cir. 2002); *Fed. Trade Comm'n v. Gill*, 265 F.3d 944, 954 (9th Cir. 2001).  In determining whether a

9   genuine issue of material fact exists, the court views the evidence and draws inferences in the light

10  most favorable to the non-moving party.  *See Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of*

11  *the Navy*, 365 F.3d 827, 832 (9th Cir. 2004); *Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564,

12  568 (9th Cir. 2004).

## ANALYSIS

14  **I.      Statute of Limitations**

15         The parties do not dispute that the limitations period applicable to the Kryzyzanowskis'

16  claims are as follows:  (1) four years for (a) breach of contract and warranty, Cal. Civ. Proc. § 377,

17  1st para.; and (b) violating the UCL, Cal. Bus. & Prof. Code § 17208; and (2) three years for

18  (a) breach of the implied covenant of good faith and fair dealing, *id.* § 338(b); (b) breach of duty to

19  warn, *id.*; (c) negligent training, supervision, and retention, *id.*; (d) false advertising under § 17500

20  *et seq.* of the Business and Professions Code, Civ. Proc. Code § 338(a);[4] and (e) violating the

21  CCRA, Civ. Code § 1783.

22         The parties also do not dispute that under § 312 of the Civil Code, "[a] plaintiff must bring a

23  claim within the limitations period after accrual of the cause of action."  *Fox v. Ethicon*

24  *Endo-Surgery, Inc.*, 35 Cal.4th 797, 806, 110 P.3d 914 (2005).  "Generally speaking, a cause of

25  action accrues at " 'the time when the cause of action is complete with all of its elements.' "  *Id.*

26  ───────────────────

27  [4]     Orkin alleges there is a split of authority as to whether the limitations period for § 17500
    claims is three or four years, Mot. at 7 n.4, but the only California authority it provides, holds that it
28  is three years.  *See County of Fresno v. Lehman*, 229 Cal.App.3d 340, 346, 280 Cal.Rptr. 310
    (1991).

at 806-07 (quoting *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 397, 87 Cal.Rptr.2d 453, 981 P.2d 79 (1999)).  "An important exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox*, 35 Cal.4th at 807.  The parties' dispute centers around when the Kryzyzanowskis[5] discovered or had reason to discover their claims, and whether their limitations period are equitably tolled.

### A.   Delayed Discovery

"A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.' " *Id.* (quoting *Norgart*, 21 Cal.4th at 398).  A "suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period." *Fox*, 35 Cal.4th at 807.  The term "elements," does not require a court's hypertechnical inquiry into suspicions regarding each element of a claim, but instead refers to the " 'generic' elements of wrongdoing, causation, and harm." *Id.* As such, a court "look[s] to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them." *Id.*

"[A] potential plaintiff who suspects that an injury has been wrongfully caused must conduct a reasonable investigation of all potential causes of that injury." *Id.* at 808.  "If such an investigation would have disclosed a factual basis for a cause of action, the statute of limitations begins to run on that cause of action when the investigation would have brought such information to light." *Id.*  The thrust of the discovery rule is that it "does not encourage dilatory tactics[.]" *Id.* at 807.  One who has reasonably suspects a wrongful injury must choose whether to file suit or sit on their rights. *Norgart*, 21 Cal.4th at 398.  The discovery rule applies to torts, *see Fox*, 35 Cal.4th at 806-07, and it applies to breaches of contract occurring without the plaintiff's knowledge and where the harm will

---

[5] Although Ms. Krzyzanowski is a plaintiff, the Court's focus is on Mr. Krzyzanowski's state of mind.  Ms. Krzyzanowski testified that she had no dealings with Orkin, took no part in any decisions regarding Orkin's services, only knew of any dealings through her husband, and has no knowledge of whether Orkin provided proper or improper services or whether they have been harmed, except based on what her husband has told her.  Mot. at 2 n.2.  Further, she took no part in the decision to sue, and is leaving all the decisions regarding this litigation to her husband and her attorneys.  *Id.*

1   not reasonably disclosed until a later date, *see Gryczman v. 4550 Pico Partners, Ltd.*, 107

2   Cal.App.4th 1, 4, 131 Cal.Rptr.2d 680 (2003).

3        Orkin asserts that the Krzyzanowski's claims are all time-barred. Mot. at 8.  It notes that

4   when Mr. Krzyzanowski discovered the reinfestation in 2002, he clearly concluded that Orkin had

5   breached its promise to rid his home of termites.  *Id.*  Orkin further notes that he last entered into a

6   contract in October 2002, last viewed a brochure in 2002, and his house was last treated in June

7   2003, after which there have been no termite problems.  *Id.* at 8-9.  Orkin asserts that as of October

8   2002, he reasonably suspected that Orkin had wrongfully caused the reinfestation, but failed to sue

9   until October 19, 2007, or five years later, making his claims time barred.  *Id.* at 9.

10       Mr. Krzyzanowski asserts that his claims are based on his expert's conclusions which show

11  that Orkin failed to deliver services as promised.  Opp'n at 13.  He asserts that as a non-expert he

12  could not have known in 2002, for example, that Orkin had only used 27 gallons of Prelude in 1999,

13  rather than an industry standard 317 gallons.  *See id.*  He also notes that *April Enterprises, Inc. v.*

14  *KTTV*, 147 Cal.App.3d 805, 832 n.15, 195 Cal.Rptr. 421 (1983), holds that plaintiffs should not be

15  compelled to file "hair trigger" suits just to "smoke out" possible "secret breaches" by defendants

16  like Orkin.  Opp'n at 13.  And he asserts that he would not have paid Orkin an additional $2,330 in

17  2002 if he had mistrusted Orkin.  *Id.*  Finally, he asserts that the 2002 infestation could have

18  occurred even if Orkin had fully performed as promised, and thus did not put him on notice of any

19  wrongdoing by Orkin, which wrongdoing he did not reasonably suspect until he met with his

20  attorneys in April 2007.  *Id.*

21       The Court notes that Krzyzanowski unambiguously testified that when he discovered the

22  2002 infestation, he concluded that Orkin had not lived up to its promises in its 1999 contract or

23  1999 brochure, or up to those made by its agents in 1999.  His earlier deposition testimony that he

24  could not respond to the question, or that he did not know during his deposition what he thought in

25  2002, does not create a genuine issue of material fact.  In 2002, he reasonably suspected that Orkin's

26  wrongdoing had caused him harm.  *See Fox*, 35 Cal.4th at 807.  Specifically, that its failure to apply

27  liquid and bait stations as promised in 1999 and 2000 had caused a reinfestation, for which he would

28  have to pay $2,330 to avoid further property damages.  At this point in time, he had sufficient

1    reasonable suspicions of wrongdoing to choose to either investigate, by contacting an attorney or by

2    other means, or sit on his rights.  *See Norgart*, 21 Cal.4th at 398.  He chose the latter and his claims

3    predicated on his 1999 contract accrued at that time.

4        None his arguments successfully refute this conclusion.  While he may not have known in

5    2002 what his expert would conclude in 2009, this does not alter the fact that he reasonably

6    suspected in 2002 that Orkin's failure to properly provide services in 1999 through 2000 caused his

7    2002 reinfestation.  Likewise, neither the fact that he paid Orkin $2,330 for the 2002 contract to

8    redress the 2002 reinfestation, nor the possibility that the 2002 reinfestation might have occurred

9    even if Orkin had provided service as promised in 1999 and 2000, prevented him in 2002 from

10   having reasonable suspicions regarding Orkin's 1999 and 2000 services.

11       Nor is *April Enterprises* availing to him.  In *April Enterprises*, the defendant possessed video

12   tapes in which both parties had certain rights under a contract.  147 Cal.App.3d at 813-14.  The

13   defendant, however, without any notice to or knowledge by April Enterprises ("April"), erased the

14   tapes, possibly in 1972.  *Id.* at 814, 824 n.9.  April, however, did not find out until 1976.  *Id.* at 814.

15   Given the secrecy of the breach, the court held that April's breach of contract cause of action was

16   tolled until it discovered the erasure, assuming it could demonstrate on remand its due diligence in

17   discovering the injury.  *Id.* at 833.

18       In this matter, regardless of whether or when Orkin allegedly engaged in any "secret breach,"

19   Krzyzanowski reasonably suspected a breach when he discovered the 2002 infestation.  Thus, just as

20   April's limitations period began when it reasonably suspected a secret breach in 1976,

21   Krzyzanowski's limitations periods began in 2002, when he discovered Orkin's alleged secret

22   breach.  *April Enterprises* thus does not help him.

23       Construing all the evidence in Kryzyzanowski's favor, *see Anderson*, 477 U.S. at 255, no

24   reasonable fact finder could find that he did not reasonably suspect in 2002 that Orkin had breached

25   its promises in providing services in 1999 and 2000, causing his reinfestation in 2002.  Thus, in

26   2002, as a matter of law, his claims accrued which were related to Orkin's 1999 and 2000 conduct,

27   and their limitations periods ran in 2005 and 2006.

28       That said, however, in 2002, Krzyzanowski signed a new and completely separate contract

with Orkin, for $2,330, subject to renewal for up to ten years.  After he signed this new contract, he asked an Orkin technician, "Is my problem going to be solved now and everything?"  Docket No. 86, Ex. "A" at 59.  And the technician answered, "It should be taken care of."  *Id.*  Despite the need for retreatments in December 2003 and June 2003, Krzyzanowski renewed through December 2007.  He only let his contract lapse, *after* he brought this suit in October 2007, which was *after* he saw his attorneys in April 2007.  Orkin provides no evidence tending to show that Krzyzanowski's claims based on Orkin's services related to its *2002 contract* accrued at any time prior to seeing his attorneys in April 2007.  This result is buttressed by the fact that after June 2003, there have been no reinfestations to trigger any suspicions.  If anything, the claims related to the 2002 contract appear predicated on facts largely within the purview of Krzyzanowski's expert, and not Krzyzanowski.  Thus, there is genuine issue of material fact as to when the limitations periods ran on Krzyzanowski's claims predicated on Orkin's services provided under the 2002 contract.

    **B.**       **Equitable Tolling**

       The parties dispute whether the Kryzyzanowskis' claims predicated on Orkin's 1999 and 2000 conduct are saved from staleness by equitable tolling, due to Orkin's alleged fraudulent concealment.  "A close cousin of the [delayed] discovery rule is the "well accepted principle . . . of fraudulent concealment."  *Bernson v. Browning-Ferris Indus.*, 7 Cal.4th 926, 931, 30 Cal.Rptr.2d 440 (1994) (quoting *Sanchez v. S. Hoover Hosp.*, 18 Cal.3d 93, 99, 132 Cal.Rptr. 657, 553 P.2d 1129 (1976)).

> "It has long been established that the defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations, but *only for that period during which the claim is undiscovered by plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have discovered it.*"

*Id.* (emphasis added).

This rule's "rationale 'is that the culpable defendant should be estopped from profiting by his own wrong to the extent that it hindered an "otherwise diligent" plaintiff in discovering his cause of action.' "  *Bernson*, 7 Cal.4th at 931 (quoting *Sanchez*, 18 Cal.3d at 100); *see also Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal.4th 623, 637, 54 Cal.Rptr.3d 735 (2007) (Tolling due to fraudulent

concealment "will last as long as a plaintiff's reliance on the misrepresentations is reasonable.").

Mr. Krzyzanowski asserts that under *Bernson*, his claims were equitably tolled due to Orkin's alleged fraudulent concealment.  Opp'n at 14.  As evidence of this fraudulent concealment, he points to his expert's testimony that Orkin engaged in allegedly deceptive practices.  *Id.* at 14-15.  Orkin disputes that this testimony constitutes evidence of fraudulent concealment.  Reply at 7.  Orkin also asserts that under *Bernson*, any equitable tolling would cease in 2002, when Kryzyzanowski reasonably suspected that Orkin had allegedly breached its promises in 1999 and 2000, thus causing the 2002 reinfestation.  *Id.* at 8.

The Court need not address whether Kryzyzanowski has made a showing of fraudulent concealment, because whether he has or not, he is not entitled to equitable tolling.  The Court notes that it already found that his claims predicated on Orkin's conduct in 1999 and 2000, accrued in 2002, for the reasons just stated by Orkin.  "The fraudulent concealment doctrine ' "does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, *if a plaintiff is on notice of a potential* claim." ' "  *Snapp & Assoc. Ins. Servs., Inc. v. Malcolm Bruce Burlingame*, 96 Cal.App.4th 884, 890-91, 117 Cal.Rptr.2d 331 (2002) (emphasis added) (quoting *Rita M. v. Roman Catholic Archbishop*, 187 Cal.App.3d 1453, 1460, 232 Cal.Rptr. 685 (1986)).  That is, it does not come into play where a plaintiff's claim has accrued because he or she has a "*suspicion* of wrongdoing, coupled with a knowledge of the harm and its cause . . . ."  *Snapp*, 96 Cal.App.4th at 891 (emphasis in original) (citing *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1112, 245 Cal.Rptr. 658, 751 P.2d 923 (1988)).  Because Kryzyzanowski was on notice of a potential claim in 2002, when he discovered the reinfestation, he is not entitled to equitably toll the limitations period for his claims predicated on Orkin's 1999 and 2000 conduct, based on any alleged fraudulent concealment by Orkin.

### 3.    Summary

There is no genuine issue of material fact as to when the limitations periods ran on the Kryzyzanowskis' claims related to the 1999 contract.  The Court thus GRANTS Orkin's Motion for Summary Judgment, in part, on the Kryzyzanowskis' claims to the extent predicated on Orkin's conduct in 1999 and 2000 related to the 1999 contract.  In contrast, there is a genuine issue of

1   material fact as to when the limitations periods ran on the Kryzyzanowskis' claims related to the

2   2002 contract.  The Court thus DENIES Orkin's Motion for Summary Judgment, in part, on the

3   Kryzyzanowskis' claims to the extent predicated on Orkin's conduct from 2002 through 2007

4   related to the 2002 contract.

5   **II.      Motion to Dismiss**

6          As an alternative to summary judgment for this entire matter, Orkin requests dismissal of

7   certain claims or portions thereof.[6]  Under Federal Rule of Civil Procedure 12(b)(6), a claim may be

8   dismissed if it does not "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

9   When considering a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint is liberally

10  construed in its favor and all well-pleaded facts are taken as true.  *Syverson v. IBM Corp.*, 472 F.3d

11  1072, 1075 (9th Cir. 2007).  Conclusory allegations of law, unwarranted deductions of fact, or

12  unreasonable inferences, however, are insufficient to defeat a motion to dismiss.  *See Fields v.

13  Legacy Health Sys.*, 413 F.3d 943, 950 n.5 (9th Cir. 2005); *Sprewell v. Golden State Warriors*, 266

14  F.3d 979, 988 (9th Cir. 2001).  If dismissal is warranted, it is generally without prejudice, unless it is

15  clear the complaint cannot be saved by any amendment.  *See Sparling v. Daou*, 411 F.3d 1006, 1013

16  (9th Cir. 2005), *cert. denied*, 546 U.S. 1172 (2006); *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th

17  Cir. 2002).  In resolving a motion to dismiss a Court may take judicial notice as provided by Federal

18  Rule of Evidence 201, at a party's request, without transforming a motion to dismiss into one for

19  summary judgment.  *See MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 503 (9th Cir. 1986).

20         **A.      Breach of the Implied Covenant of Good Faith and Fair Dealing**

21         On two grounds, Orkin requests dismissal of Krzyzanowski's claim for breach of the implied

22  covenant of good faith and fair dealing.  First, Orkin asserts that Krzyzanowski has pled this claim

23  as a tort, which under *Cates Construction, Inc. v. Talbot Partners*, 21 Cal.4th 28, 43-46, 86

24  Cal.Rptr.2d 855 (1999), is only allowed in insurance cases, which this litigation is not.  Mot. at 10.

25  Alternatively, Orkin asserts that Krzyzanowski has pled this claim under contract law, and thus

26

27  [6]      The Court notes that Orkin never provides the applicable legal standard, nor styles its Motion
    as for anything other than for summary judgment.  Nonetheless, a party may raise a 12(b)(6)
28  challenge in any pleading permitted under Federal Rule of Civil Procedure 7(a).  Fed. R. Civ. P.
    12(h)(2)(A).

impermissibly duplicated his breach of contract claim.  *Id.*[7]  Krzyzanowski counters that he has not pled his claim for breach of the implied covenant of good faith and fair dealing as a tort, nor is it redundant to his breach of contract claim.  Opp'n at 16.  Rather, he states that this claim "summarizes allegations made elsewhere in [his] complaint and lists examples of wrongdoing and concludes by demanding entry of a prohibitory injunction."  *Id.*

The Court notes that Krzyzanowski's claim, which is titled "Equitable Relief" is very unclear.  It requests the Court, in equity, to enjoin wrongful conduct, order disgorgement, and reform existing agreements.  Docket No. 1 ¶ 66.  The request is predicated on breaches of specified as well as unspecified express and implied duties and covenants, among them, the implied covenant of good faith and fair dealing.  *See id.* ¶¶ 62-63.  This covenant, however, is not mentioned anywhere else in Krzyzanowski's complaint.  As such, he has predicated his request for relief on a claim *not* clearly or separately pled in his complaint.  This is an improper pleading practice.  *See* Fed. R. Civ. P. 10(b) (separate paragraphs for separate claims).

Because it is poorly pled, the Court cannot address Orkin's tort and contract concerns with this claim.  This warrants dismissal with leave to amend, so that Kryzyzanowski may properly and separately plead what they are attempting to plead.  *See Sparling*, 411 F.3d at 1013 (If dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment.); *Gompper*, 298 F.3d at 898 (same).  The Court thus GRANTS Orkin's motion to dismiss the Kryzyzanowski's claim for Equitable Relief with leave to amend.

**B.      Breach of Duty to Warn; Negligent Training and Supervision**

Orkin requests that the Court dismiss Krzyzanowski's claims for breach of duty to warn and for negligent training and supervision.  Orkin asserts that these claims are barred under the economic loss doctrine, and because they are duplicative of his breach of contract claim.  Mot. at 11.  Krzyzanowski argues that the evidence shows that Orkin fraudulently induced him to contract,

---

[7]      Orkin buries a third challenge in a footnote, asserting that *McDowell v. Watson*, 59 Cal.App.4th 1155, 1159, 69 Cal.Rptr.2d 692 (1997), holds that California does not recognize a cause of action for injunctive relief. Mot. at 10 n.5  The Court does not address arguments not worthy of inclusion in the body of a pleading.  Nor would it be worthwhile to do so here, as (1) *McDowell*'s holding appears limited to the context of disposing of motions for attorney's fees, and (2) no California court has ever cited *McDowell* for the holding which Orkin asserts.

and/or Orkin had a duty of care or disclosure independent of any contract.  Opp'n at 17-18.  In reply, Orkin asserts that Krzyzanowski has not pled fraudulent inducement in his complaint, nor has he identified any duty which bound Orkin independently of any contract.  Reply at 12.

"Economic loss" consists of damages for inadequate value, costs of repair and replacement of a defective product, or consequent loss of profits, without any claim of personal injury or damages to other property.  *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979, 988, 102 P.3d 268 (2004).  The economic loss rule distinguishes between remedies available in contract and in tort.  *Id.*  It provides that where "a purchaser's expectations in a sale are frustrated because a purchased product is not working properly, their remedy is in contract alone, as they have suffered only "economic losses."  *Id.*

The gist of Krzyzanowski's complaint, and his expert's testimony, is that he paid Orkin to provide certain services, such as the use of actual bait traps and a "traditional treatment to critical and infested areas" but instead received no bait traps and a limited spot treatment using less than the amount of termaticide required by industry standards.  He has not claimed any physical or property damage.  He has thus only claimed to have received inadequate value for his money, which is an "economic loss."

Tort damages, however, are available in contract cases involving: a breach of duty which directly causes physical injury; a breach of the covenant of good faith and fair dealing in insurance contracts; a wrongful discharge in violation of public policy; or fraudulent inducement.  *Id.* at 989-90.

Krzyzanowski claims fraudulent inducement.  Fraudulent inducement occurs when " ' "the promisor knows what he is signing but his consent is induced by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is voidable." ' "  *Duffens v. Valenti*, 161 Cal.App.4th 434, 449, 74 Cal.Rptr.3d 311 (2008) (quoting *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal.4th 394, 415, 926 P.2d 1061 (1996) (quoting *Ford v. Shearson Lehman Amer. Express, Inc.*, 180 Cal.App.3d 1011, 1028, 225 Cal.Rptr. 895 (1986))).  The elements of fraud are: "(1) misrepresentation of a material fact (consisting of false representation, concealment or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to deceive and induce reliance;

(4) justifiable reliance on the misrepresentation; and (5) resulting damage." *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal.App.4th 445, 481-82, 80 Cal.Rptr.2d 329 (1998); *see* Civ. Code §§ 1572, 1709-1710.

Krzyzanowski's expert, Orkin's Technical Director from 2002 through 2005, testified that Orkin marketed bait and liquid contracts as a two-for-one deal, when in fact, Orkin knew that FirstLine was neither bait nor effective at controlling colonies, and when it knew that its liquid application was insufficient and inconsistent with industry standards. He further testified that this was Orkin's intended practice. He also testified that the 2002 brochure contained misleading statements regarding the comprehensive nature and effect of Orkin's services, and that Orkin never intended to live up to its brochure's representations. And he testified that Orkin not only failed to disclose the foregoing information to consumers, but relied upon their ignorance of pest control practices in selling and providing its inadequate services. Krzyzanowski testified that in 2002 he relied on the brochure's representations and the salesperson's representations, which he testified were the same as the brochure's, when he paid $2,330 to Orkin for its services.

Construing this evidence in Krzyzanowski's favor, *see Anderson*, 477 U.S. at 255, a reasonable fact finder could find that Orkin knowingly misrepresented material facts as well as failed to disclose material facts, with the intent to deceive and induce Krzyzanowski to contract with Orkin. *See Merrill Lynch*, 68 Cal.App.4th at 481-82. A reasonable fact finder could also find that Krzyzanowski justifiably relied on Orkin's representations to his detriment, by paying for services Orkin never intended to render and which were never rendered. *See id.* Having found fraud, a reasonable fact finder could also find fraudulent inducement: that although Krzyzanowski knew what he was signing in 2002, his consent was induced by Orkin's fraud. *Duffens*, 161 Cal.App.4th at 449. As such, there is a genuine issue of material fact as to whether Kryzyzanowski may seek tort damages for Orkin's breach of contract.

Turning to Krzyzanowski's second argument, tort damages are also available in contract actions, for a *tortious* breach of contract. *Id.* at 990. Such a breach exists when: (1) the breach is accompanied by a traditional common law tort, such as fraud or conversion; (2) the means used to breach are tortious, involving deceit or undue coercion; or (3) one party intentionally breaches

17

intending or knowing the breach will cause severe, unmitigable harm in the form of mental anguish, personal hardship, or substantial consequential damages.  *Id.*  As just discussed, a reasonable fact finder could find that Orkin committed fraud when it contracted with Krzyzanowski in 2002.  Thus, this matter involves a breach accompanied by a traditional common law tort.  As such, there is a genuine issue of material fact as to whether Krzyzanowski may seek tort damages for Orkin's breach of contract.

Although Orkin seeks to *dismiss* Kryzyzanowski's claims for breach of duty to warn and for negligent training and supervision, the parties present evidence which the Court considered in ruling on Orkin's motion.  As such, the Court treats Orkin's motion as one for *summary judgment*, *see* Fed. R. Civ. P. 12(d) (considering matters outside the pleadings, transforms a motion to dismiss into one for summary judgment), and DENIES it.[8]

**C.      False Advertising**

Orkin requests the Court to dismiss Krzyzanowski's claim for false advertising under § 17500 *et seq.* of the Business and Professions Code.  Mot. at 12.  Orkin notes that he testified that he personally could not say whether the 1999 or 2002 brochures contained false statements.  *Id.* Krzyzanowski notes that his expert testified that the brochures contained false statements, concerning matters not within the knowledge base of laypeople unfamiliar with pest control services.  Opp'n at 18-19.  In reply, Orkin asserts that any alleged misrepresentations were made by its salespeople and not in its brochures.  Reply at 13.

The Court notes that Orkin fails to direct the Court to any legal authority which holds that a lay plaintiff may not meet his or her burden of proof through an expert witness, in regards to matters not readily known to laypersons.  That is, for example, it has not cited any case dismissed because a patient was unable to personally testify as to exactly how his or her doctor allegedly committed malpractice.  The Court also notes that Orkin's reply argument fails because Kryzyzanowski testified that the salesperson's statements agreed with the brochures' statements.  And the Court

---

[8]      Orkin also presents a third argument for summary judgment on these two claims, namely, that Kryzyzanowski has not proven any injury, as he has shown no infestation post-2003.  Mot. at 12.  Orkin fails to consider, however, Kryzyzanowski's monetary damages due to Orkin's alleged fraud.

1  notes that Orkin's reply is merely an attempt to factually dispute the expert's testimony, but without

2  any counter-expert testimony.[9]  Although Orkin requests the Court to *dismiss* Krzyzanowski's false

3  advertising claim, the parties present evidence to the Court which it considered in ruling on Orkin's

4  motion.  As such, the Court treats Orkin's motion as one for *summary judgment*, *see* Fed. R. Civ.

5  P. 12(d), and DENIES it.

6  **D.  Injunctive Relief under § 17200 and § 17500 of the Business and Professions**

7  **Code**

8  Kryzyzanowski requests injunctive relief under § 17203[10] and § 17535[11] of the Business and

9  Professions Code.  Docket No. 1 ¶¶ 85, 89.  Orkin requests summary judgment[12] on these requests.

10  Orkin asserts that under *Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1021-22

11  (9th Cir. 2004), Krzyzanowski has no standing to pursue them, because his contract lapsed in

12  December 2007, and as he is no longer an Orkin customer, he faces no real and immediate threat of

13  irreparable injury.  Mot. at 13.  Krzyzanowski counters that under *Armstrong v. Davis*, 275 F.3d 849,

14  861 (9th Cir. 2001), he has standing, because his prior harm stems from Orkin's ongoing policies,

15  pattern, and practice.  Opp'n at 19.

16  The Court first notes that under California law, "[i]njunctive relief under sections 17203 and

---

[9]  Orkin's reply is also not a reply, but rather a second argument which it should have raised in its Motion.

[10]  This section states in part that "[a]ny person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction.  The court may make such orders or judgments . . . as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition . . . ."  The "has engaged" language does not provide for enjoining conduct which solely occurred in the past.  *Madrid v. Perot Sys. Corp.*, 130 Cal.App.4th 440, 462-66, 30 Cal.Rptr.3d 210 (2005).  Rather, prior to amendment in 1992, the "statute said any person 'performing or proposing to perform an act of unfair competition' could be enjoined.  (Stats.1977, ch. 299, § 1, p. 1202.)"  *Madrid*, 130 Cal.App.4th at 463.  The 1992 amendment also added the second sentence, which provides the Court may *prevent* "any practice which constitutes unfair competition[.]"  *Id.*  "The purpose of the 1992 amendment was not to expand the reach of injunctions, but to abrogate case law that had held the UCL applied only to 'practices,' and [that] a single act of misconduct could not constitute a 'practice.' "  *Id.*

[11]  This section states in part that "[a]ny person, corporation, firm, partnership, joint stock company, or any other association or organization which violates or proposes to violate this chapter [§ 17500 *et seq.*] may be enjoined by any court of competent jurisdiction."

[12]  Orkin placed this request, however, in its motion to dismiss.

19

17535 cannot be used . . . to enjoin an event which has already transpired; a showing of threatened future harm or continuing violation is required[,]" "absent a showing that past violations will probably recur." *People v. Toomey*, 157 Cal.App.3d 1, 20, 203 Cal.Rptr. 642 (1984) (construing § 17203 & § 17535); *see also People ex rel. Brown v. Powerex Corp.*, 153 Cal.App.4th 93, 112, 62 Cal.Rptr.3d 638 (2007) (construing § 17203); *Madrid v. Perot Sys. Corp.*, 130 Cal.App.4th 440, 462-66, 30 Cal.Rptr.3d 210 (2005) (same).  Likewise, "Article III standing requires an injury that is actual or imminent, not conjectural or hypothetical.  In the context of injunctive relief, the plaintiff must demonstrate a real or immediate threat of an irreparable injury." *Hangarter*, 373 F.3d at 1021-22.  In *Hangarter*, the court held that an insured who no longer has a contract with an insurance company, may not enjoin the company's conduct under § 17203, as they are no longer personally threatened by its conduct. *Id.* at 1003, 1006, 1021-22. *Toomey* and *Hangarter* support Orkin's position that Kryzyzanowski is barred from seeking injunctive relief.

Unfortunately for Kryzyzanowski, *Armstrong* also supports Orkin's position. *Armstrong*, which involved a class action, holds that in order to assert claims on behalf of a class, a named plaintiff must have personally sustained or be in immediate danger of sustaining a direct injury. *Armstrong*, 275 F.3d at 861.  Also, their harm suffered must constitute an "actual injury." *Id.*  And, where a named plaintiff seeks prospective injunctive relief, they must demonstrate that they are realistically threatened by a repetition of defendant's conduct. *Id.*  A named plaintiff may demonstrate repetition at least two ways. *Id.*  First, they may show that the defendant had, at the time of the injury, a written policy, and that the injury "stems from" that policy. *Id.*  Alternatively, they may show that the injury stems from a defendant's official pattern of behavior. *Id.*

For the sake of argument, the Court ignores the fact that Krzyzanowski is not a named plaintiff, as there is no class certified in this matter, and assumes that Orkin had an ongoing written policy or official practice which directly and actually injured him in the past.  Even with these concessions to Krzyzanowski, however, because he has no contract with Orkin, nor has produced any evidence he intends to obtain one in the future, he cannot show that he is realistically threatened by a repetition of Orkin's conduct. *See Armstrong*, 275 F.3d at 861.  He thus has no standing under

20

1   Article III to enjoin Orkin's conduct.[13]  Although Krzyzanowski argues that he should not have to

2   keep paying annual fees to Orkin for a service they allegedly will not provide, in order to claim

3   injunctive relief, Opp'n at 20, the law of standing requires otherwise.  The Court GRANTS Orkin's

4   Motion for Summary Judgment, in part, on the Kryzyzanowskis' requests for injunctive relief under

5   § 17203 and § 17535 of the Business and Professions Code.[14]

6           **E.     Degradation**

7           Orkin alleges that Krzyzanowski "appear[s] to base several of [his] claims on" the allegation

8   that:

9                   Orkin uniformly failed to inform customers that it would not maintain the

10                  chemical barrier after the product was believed to have worn off and instead

11                  continued to collect annual renewal premiums for the protection service when it knew

12                  any chemical barriers it applied had worn off and that the basic prevention service

13                  offered by the contract was not being provided.

14  Docket No. 1 ¶ 25.

15          Orkin requests that the Court dismiss these claims because this allegation is allegedly based

16  on the "unsupported assertion that Orkin has an obligation to" re-treat "absent evidence of

17  infestation or disturbance of the termaticide barrier."  Mot. at 15.  Krzyzanowski counters that the

18  1999 brochure stated that despite termaticide degradation, Orkin provides "ongoing" protection.

19  Opp'n at 25.  He notes that his expert testified that Orkin failed to apply the necessary amount of

20

21  _____

    [13]     Kryzyzanowski's reliance on *Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075 (9th
22  Cir. 2004), is also unavailing.  Fortyune was a wheelchair-bound person, who saw three to four
    movies per week, and who was unable to view a movie with his companion because a non-
23  wheelchair-bound patron refused to vacate a wheelchair companion seat.  *Id.* at 1078-79.  While the
    court held that this type of incident could easily reoccur, *id.* at 1082-83, Kryzyzanowski shows no
24  such possible repetitive conduct on his or Orkin's part.

25  [14]     In its Reply, Orkin requests the Court to also dismiss the Kryzyzanowskis' claim for
    Equitable Relief for lack of standing.  Reply at 11.  Orkin did not make this request in its Motion,
26  nor is this a reply to any argument raised in Kryzyzanowski's Opposition.  As such, because Orkin
    deprived Kryzyzanowski of his opportunity to address whether he has standing *outside* of § 17203 or
27  § 17535 to bring a claim for injunctive relief, and because the Court has already granted him leave to
    drop or amend this claim, the Court will not consider Orkin's request.  *See Zamani v. Carnes*, 491
28  F.3d 990, 997 (9th Cir. 2007) (A "court need not consider arguments raised for the first time in a
    reply brief.").

liquid treatment in 1999, 2002, and 2003, then failed to follow up with its promised quality control process to correct its service deficiencies. *Id.* Orkin replies that Krzyzanowski still fails to identify a duty on Orkin's part to re-treat absent a re-infestation, and notes that his expert never testifies regarding Prelude or any other chemical's degradation rate.[15] Reply at 14.

The Court notes that Orkin misconstrues Krzyzanowski's allegations. He correctly asserts that if Orkin promises a certain duration of efficacy for its liquid treatment, then it should deliver on that promise, and re-treat if it knows that its liquid treatment has not lasted for the promised duration. Nonetheless, Krzyzanowski's reliance on representations in the 1999 brochure is misplaced, as the Court has held that his claims predicated on it are time barred. While the 2002 brochure represents that "Orkin's Liquid Treatments give you relief from the termites you have now, plus protection from future infestations," Docket No. 99 at 5, it does not represent Orkin's chemicals' degradation rates. Nor does Krzyzanowski's expert state that this quote misleads by implying an unrealistic degradation rate, nor does he testify as to what is Prelude's degradation rate.

As such, Krzyzanowski fails to provide any evidence to create a genuine issue of material fact as to whether Orkin "uniformly failed to inform customers that it would not maintain the chemical barrier after the product was believed to have worn off," or collected annual renewal premiums after it had worn off. Although Orkin requests the Court to *dismiss* Krzyzanowski's claims to the extent predicated on paragraph 25 of his complaint, the parties present evidence to the Court which it considered in ruling on Orkin's motion. As such, the Court treats Orkin's motion as one for *summary judgment*, *see* Fed. R. Civ. P. 12(d), and GRANTS it, in part, on Krzyzanowski's claims to the extent they are predicated on paragraph 25 of his complaint.

**III.     Motion to Strike**

Orkin notes that in his deposition, Krzyzanowski testified that he personally could not explain how or whether the allegations found in paragraph 38(c), (e) through (h), (k), (l), (n) through (p), (q), and (t) through (w) of his complaint applied to his litigation. Mot. at 14. Orkin requests the

---

[15]     Orkin also notes in a barely 10-point footnote that the contracts provide for retreatment if reinfestation occurs. Reply at 14 n. 11. Orkin is directed to use 12-point type in future pleadings, per Civil Local Rule 3-4(c)(2).

Court to *strike* these allegations. *Id.* Krzyzanowski first notes that under Federal Rule of Civil Procedure 12(f), the time has run to file a motion to strike. Opp'n at 22 n.11. He also counters that his expert provides sufficient evidentiary support for all these allegations, which concern matters beyond the knowledge of laypeople unfamiliar with pest control services. Opp'n at 21-24. As such, he asserts that "summary adjudication" would be inappropriate for any of them. *Id.*

The Court first notes that Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act: . . . (2) on motion made by a party . . . before responding to the pleading . . . ." Fed. R. Civ. P. 12(f). Orkin answered on December 3, 2007. *See* Docket No. 13. It did not file the Motion until almost a year later, on December 2, 2008. *See* Docket No. 84. The time has run for Orkin to file a motion to strike. Nonetheless, despite the express styling of its request, Orkin clearly does not request that the paragraph 38 allegations be stricken based solely on a facial analysis. Rather, Orkin clearly seeks to adjudicate them based on an analysis of matters outside the pleadings, i.e., Krzyzanowski's deposition testimony. As such, the Court treats Orkin's request much as Kryzyzanowski did, as one for partial summary judgment under Federal Rule of Civil Procedure 56(b).

Turning to the parties' dispute over paragraph 38, the Court notes that Kryzyzanowski's expert provides sufficient testimony to create a fact issue on the paragraph 38 allegations other than (g), (h), (o) through (q), (t), and (u). Allegation (g) claims that Orkin "[f]ailed to inform consumers of the failure of protective measures to induce additional payments, premiums, and alternative control or prevention services[.]" There is no evidence to suggest that Kryzyzanowski paid any "additional payments or premiums" or used any "alternative control or prevention services." Allegation (h) claims that Orkin "[i]llegally raised annual renewal fees[.]" There is no evidence that Orkin raised Krzyzanowski's annual renewal fees. Allegation (o) addresses "Lifetime" protection contracts, which Krzyzanowski never had. Allegation (p) claims that Orkin "[i]nserted limitation of remedy and damages clauses into contracts to conceal its wrongdoing[.]" There is no evidence before the Court of any such conduct. Allegation (q) concerns Orkin's claim regarding its ability to identify new termite damage. Kryzyzanowski's expert testifies that these claims are made in "some

23

repair contracts and inspection forms used in the 1990s and 2000s," but fails to testify that any were used with Krzyzanowski.  Allegation (t) alleges that Orkin "[s]witched customers to different services to conceal past wrongdoing[.]"  There is no evidence to suggest that Krzyzanowski ever switched services.  Finally, allegation (u) concerns statistics Orkin provided in its 1999 brochure regarding termite damage in the United States.  The Court has already held that claims related to this contract are time barred.

In summary, there is a genuine issue of material fact regarding the allegations raised in paragraph 38(c), (e), (f), (k), (l), (n), (v), and (w) of Krzyzanowski's complaint.  The Court thus DENIES Orkin's Motion for partial summary judgment on these allegations.  The Court, however, GRANTS Orkin's Motion for partial summary judgment on the allegations raised in paragraph 38(g), (h), (o) through (q), (t), and (u) of Kryzyzanowski's complaint.[16]

## CONCLUSION

Accordingly, the Court GRANTS in part and DENIES in part Orkin's Motion for Summary Judgment [Docket No. 84] as follows:

(1)     The Court GRANTS summary judgment on the Kryzyzanowskis' claims as time barred, to the extent predicated on Orkin's conduct in 1999 and 2000 related to the 1999 contract; the Court DENIES summary judgment on the Kryzyzanowskis' claims, to the extent predicated on Orkin's conduct from 2002 through 2007 related to the 2002 contract;

(2)     The Court DISMISSES the Kryzyzanowskis' claim for Equitable Relief, but with leave to amend;

(3)     The Court DENIES summary judgment on the Kryzyzanowskis' claim for breach of duty to warn, for negligent training and supervision, and for false advertising under § 17500 *et seq.* of the California Business and Professions Code;

(4)     The Court GRANTS summary judgment on the Kryzyzanowskis' requests for injunctive relief under § 17203 and § 17535 of the Business and Professions Code;

---

[16]     In its Reply, Orkin asks the Court to grant partial summary judgment on paragraph 38(r). Reply at 15.  Orkin did not make this request in its Motion, depriving Kryzyzanowski's expert of the chance to respond to it.  The Court does not consider this request which Orkin should have raised in its Motion.  *See Zamani*, 491 F.3d at 997.

1   (5)   The Court GRANTS summary judgment on the Kryzyzanowskis' claims to the extent

2   predicated on paragraph 25 of their complaint [Docket No. 1]; and

3   (6)   The Court DENIES summary judgment on the allegations raised in paragraph 38(c),

4   (e), (f), (k), (l), (n), (v), and (w) of the Kryzyzanowskis' complaint; the Court GRANTS summary

5   judgment on the allegations raised in paragraph 38(g), (h), (o) through (q), (t), and (u) of the

6   Kryzyzanowskis' complaint.

7       The Court ORDERS that the Kryzyzanowskis have 20 days from the date of the entry of this

8   Order on the docket to file a First Amended Complaint.  The Kryzyzanowskis may *only* amend their

9   claim for Equitable Relief to either state a claim for equitable relief or to state a claim for breach of

10  the implied covenant of good faith and fair dealing, or to state both as separate claims.

11

12      IT IS SO ORDERED.

13

14  February 24, 2009                    _____
                                          Saundra Brown Armstrong
15                                        United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28