UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| RONALD KRZYZANOWSKI AND ILEANA KRZYZANOWSKI, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ORKIN EXTERMINATING COMPANY, INC.; ROLLINS, INC.,<br><br>Defendants. | Case No:  C 07-05362  SBA<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY COUNSEL**<br><br>[Docket 172] |

This is a putative class action brought by customers of Orkin, Inc., which is a subsidiary of Rollins, Inc. (collectively "Orkin" unless noted otherwise), who accuse the companies of engaging in unfair business practices in violation of California law.  Plaintiffs are represented by two law firms:  (1) Hoffman & Lazear ("the Hoffman firm") and (2) Campbell Law P.C., in which Thomas Campbell ("Campbell") is the primary attorney.

The parties are presently before the Court on Orkin's motion to disqualify Plaintiffs' counsel Campbell Law P.C.  based on alleged breaches of various ethical rules.  Specifically, Defendants allege that Plaintiffs' counsel:  (1) engaged in *ex parte* contact with Orkin's expert, Dr. James Ballard; (2) engaged in improper solicitation of clients; and (3) engaged in *ex parte* contact with James Tharpe, a current employee of Rollins, Inc. ("Rollins").  Having read and considered the papers filed in connection with this matter, and being fully informed, the Court hereby DENIES the motion for the reasons set forth below.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed.R.Civ.P. 78(b).

## I. BACKGROUND

### A. INITIATION OF THE LAWSUIT AGAINST ORKIN

On or around February 5, 2007, the Hoffman firm placed an advertisement in a monthly newsletter called the <u>The Catholic Voice</u>, "seeking communication with persons who had paid termite companies for termite protection."  Pls.' Opp'n at 10:7-8; Eisenhut Decl. Ex. A.[1] Plaintiffs' counsel asserts that the purpose of the notice was to "obtain information from homeowners who had dealt with termite companies and to file actions for consumers with legitimate claims who sought to recover for them." <u>Id.</u> at 10:8-11.  After viewing the notice, Plaintiffs contacted the Hoffman firm.  Defs.' Mot. to Disqualify Counsel ("Mot.") at 5:16-17. On October 19, 2007, the Hoffman firm and co-counsel Campbell Law P.C. filed the instant action against Orkin on behalf of Plaintiffs.

### B. PRIOR MOTION FOR SANCTIONS BEFORE MAGISTRATE JUDGE LAPORTE

In the course of this action, Orkin filed a motion for sanctions against Plaintiffs' counsel because Campbell violated a protective order when he publically disclosed confidential information regarding sales information on his firm's website.  Defs.' Mot. at 6:20-21; Eisenhut Decl. Ex. C at 2:10-4:21.  On March 24, 2009, Magistrate Judge Elizabeth Laporte held a hearing on Orkin's motion for sanctions. (Docket No. 133.)  However, because this was Campbell's first offense, Judge Laporte gave Campbell the "benefit of the doubt, admonishing Plaintiffs' counsel for his violation rather than sanctioning him." <u>Id.</u> at 6:22-24.  Despite this, Judge Laporte did caution and warn Campbell against such "reckless" behavior, and did not "want to see that happen again." <u>Id.</u> at 8:21-25.

### C. SUMMARY OF THE INSTANT MOTION

Orkin moves to disqualify the Campbell Law P.C. only (and *not* the Hoffman firm) on the basis of Campbell's and the Hoffman firm's alleged ethical violations.  In its moving papers filed on August 17, 2009, Orkin argues for disqualification because Campbell engaged in *ex parte* communication with Orkin's expert and because *the Hoffman firm* improperly

---

[1] The copy of the advertisement proffered to the Court by Orkin is largely illegible.

1  solicited clients by running the advertisement in the The Catholic Voice newsletter prior to the
2  filing of the instant case.  In a "supplemental brief" filed on October 6, 2009, Orkin purports to
3  add a new violation in support of its motion based on Campbell's contact with a current Rollins
4  employee.  Plaintiffs filed their opposition responding to the arguments set forth in both briefs
5  on October 19, 2009.  Defendants filed their reply on October 27, 2009.

### 1.     Conversation with Dr. James Ballard

The primary allegation in the present motion relates to an *ex parte* communication between Campbell and one of Orkin's experts, Dr. James Ballard ("Dr. Ballard").  On October 16, 2008, Orkin disclosed their experts to Plaintiffs.  Defs.' Mot. at 1:22-23.  The disclosure was sent by email from Defendants' counsel, Mark Eisenhut, to Dan Bradley ("Bradley") of the Richardson firm, which at that time was one of the firms representing Plaintiffs.  Campbell Decl. ¶ 6.[2]  Bradley forwarded the email to Campbell on October 20, 2008.  Id.  The email referenced a report by another of Orkin's experts, Dr. Lewis, but did not mention Dr. Ballard.  Id.  Apparently, Dr. Ballard's report was one the attachments, which Campbell did not review.  Id.

On July 22, 2009, Campbell conducted a search on Google for experts and found Dr. Ballard's name.  Campbell Decl. ¶ 8.  He clicked on the link to Dr. Ballard's website, and from there, clicked on the link to send Dr. Ballard an email.  Id.; Ballard Decl. ¶ 3.  The email stated, in pertinent part: "I would like to discuss with you potential consulting work regarding termite 'baiting' products and science.  Please call me at your convenience…"  Campbell Decl. ¶ 8; Ballard Decl. ¶ 3.  At the time he sent the email, Campbell was unaware that Dr. Ballard had been retained by Orkin.  Campbell Decl. ¶¶ 6, 8.

In response to Campbell's email, Dr. Ballard, who was unaware that Campbell was one of Plaintiff's counsel, called Campbell directly.  Campbell Decl. ¶ 9; Ballard Decl. ¶ 4.  During their conversation, Campbell explained how he obtained Dr. Ballard's contact information from Dr. Ballard's website.  See Ballard Decl. ¶ 6.  Campbell then proceeded to explain that he

---

[2] The Richardson firm has since withdrawn as counsel of record for Plaintiffs.

was involved in significant amounts of litigation in the pest control area, including cases involving Orkin, Terminix, and others. Id. Among other cases, Campbell mentioned a case against Orkin regarding directed liquid plus bait. Id. Campbell then mentioned that he was interested in retaining Dr. Ballard's expert services for consulting, and potentially testifying in cases involving baiting products and science. Id. Dr. Ballard responded by informing Campbell that he "thought" he was on the "opposite side" of the case mentioned. Id. ¶ 7. Before ending the call, Campbell then generally suggested that Dr. Ballard may consider working on the side of plaintiffs in the future. Dr. Ballard did not disclose any opinions from his report nor did he discuss any "facts, opinions, litigation strategies or the like in the case." Campbell Decl. ¶ 11.

### 2.     Email with James Tharpe

On September 29, 2009, Campbell sent an email to James Tharpe ("Tharpe"), a Senior IT Manager for Rollins, the parent entity of Orkin. Tharpe Decl. ¶¶ 1, 5. Using a professional networking site known as "LinkedIn," Campbell conducted a search for "former" Rollins employees. Campbell Decl. ¶ 14. Tharpe's name showed up in his search results because Tharpe was, in fact, listed as a former *and* current employee. Id. Believing that he was contacting only *former* Rollins employees, Campbell sent six emails through the LinkedIn email system to various persons. Id. Of those six emails recipients, all but Tharpe were former Rollins employees. Id.

The email stated as follows:

> I am investigating facts material to a lawsuit against Rollins and Orkin and your work history indicates that you may be able to help. I hope you will. I am a lawyer in Birmingham. My firm filed a class action against Orkin and Rollins in California concerning the "Directed Liquid Plus Bait" termite prevention service. We would like to learn about the extent to which Rollins computer systems are capable of identifying class members and the account histories for those customers or former customers. Will you help?

1 Tharpe Decl. ¶ 5.  Campbell's email also included his telephone number.  <u>Id.</u>  Prior to this
2 email, Tharpe had no contact with Campbell, and Tharpe did not respond to Campbell's
3 message.  Tharpe Decl. ¶ 6; Campbell Decl. ¶ 16.  After learning of this communication,
4 Orkin's counsel sent correspondence to Campbell "emphasizing that his contact with Mr.
5 Tharpe was improper."  Scarborough Decl. ¶ 2.  As of the filing of the various motion papers,
6 Campbell has not responded to Mr. Scarborough's email.  <u>Id.</u>

## II.  **LEGAL STANDARD**

This Court applies California law and looks to California standards of professional responsibility in determining matters of disqualification.  <u>See</u> <u>In re County of Los Angeles</u>, 223 F.3d 990, 995 (9th Cir. 2000) (motions to disqualify counsel governed by state law); N.D. Cal. Civ. L.R. 11-4(a)(1) (attorneys must "comply with the standards of professional conduct required of the members of the State Bar of California.").

A trial court's authority to disqualify an attorney derives from the power inherent in every court to control the conduct of its ministerial officers, in the furtherance of justice.  <u>In re Charlisse C.</u>, 45 Cal.4th 145, 159 (2008); <u>People ex rel. Dept. of Corps. v. SpeeDee Oil Change</u>, 20 Cal. 4th 1135, 1143-44 (1999); <u>accord</u> <u>Gas-A-Tron of Ariz. v. Union Oil Co. of Calif.</u>, 534 F.2d 1322, 1325 (9th Cir. 1976); <u>Visa U.S.A., Inc. v. First Data Corp.</u>, 241 F. Supp. 2d 1100, 1103 (N.D. Cal. 2003).  When deciding whether disqualification is warranted, the court must:

> weigh the combined effect of a party's right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqualified counsel and any tactical abuse underlying a disqualification proceeding against the fundamental principle that the fair resolution of disputes within our adversary system requires vigorous representation of parties by independent counsel unencumbered by conflicts of interest.

<u>Concat</u>, 250 F. Supp. 2d at 814.  "The purpose of disqualification is not to punish a transgression of professional ethics. … *Disqualification is only justified where the misconduct will have a 'continuing effect' on judicial proceedings*."  <u>Baugh v. Garl</u>, 137 Cal.App.4th 737,

- 5 -

744 (2006) (emphasis added); Hetos Inv., Ltd. v. Kurtin, 110 Cal.App.4th 36, 48 (2003) ("the purpose of disqualification is prophylactic, not punitive, the signification question is whether there exists a genuine likelihood that the status or misconduct of the attorney in question will affect the outcome of the proceeding before the court") (internal quotations omitted).

Because a motion to disqualify is often tactically motivated and can be disruptive to the litigation process, "disqualification is a drastic course of action that should not be taken simply out of hypersensitivity to ethical nuances or the appearance of impropriety." Sheller v. Superior Court, 158 Cal.App.4th 1697, 1711 (2008) (citations and quotations omitted); Concat LP v. Unilever, PLC, 350 F.Supp.2d 796, 814-15 (N.D. Cal. 2004). In addition, requests for disqualification "should be subjected to particularly strict judicial scrutiny." Optyl Eyewear Fashion Int'l Corp. v. Style Co., 760 F.2d 1045, 1050 (9th Cir. 1985) (internal quotations omitted). The party seeking disqualification bears a "heavy burden." City and County of San Francisco v. Cobra Solutions, Inc., 38 Cal. 4th 839, 851 (2006).

## III. DISCUSSION

Orkin brings this motion to disqualify Campbell Law P.C. (but *not* the Hoffman firm) "as a result of a consistent pattern of unethical and prejudicial conduct." Defs.' Mot. at 2:11-12. Specifically, Orkin alleges that Plaintiffs' counsel engaged in unethical behavior when (1) Campbell unilaterally contacted Dr. Ballard, one of Orkin's expert witnesses; (2) the Hoffman firm, the other firm representing Plaintiffs, solicited Plaintiffs through an advertisement posted in a newsletter; and (3) Campbell emailed a current Senior IT Manager for Rollins. Orkin alleges that these "repeated violations" show a "pattern of conduct meant to prejudice Defendants." Defs.' Mot. at 1:14-16. As relief, Orkin requests that this Court disqualify Campbell Law P.C. and its attorneys from representing Plaintiffs in the instant case.

### A. ALLEGED ETHICAL VIOLATIONS

#### 1. Contacting Opposing Party's Expert

Orkin contends that Campbell violated Federal Rule of Civil Procedure 26(b)(4) by unilaterally contacting Dr. Ballard. Rule 26(b)(4), which governs expert discovery, prohibits *ex parte* communication with the opposing side's expert. Erickson v. Newmar Corp., 87 F.3d

298, 302 (9th Cir. 1996) ("[A]n attorney who initiates *ex parte* communication with an adversary's expert disobeys the rule of professional responsibility which prohibits *intentional violations* of an established rule of procedure") (emphasis added); see also Lewis v. Telephone Employees Credit Union, 87 F.3d 1537, 1558-59 (9th Cir. 1996) (recognizing court's power to impose sanctions where attorney engaged in *ex parte* contact with opposing side's expert); Campbell Indus. v. M/V Gemini, 619 F.2d 24, 27-28 (9th Cir. 1980) (affirming disqualification of expert when attorney engaged in *ex parte* contacts with the opposing side's expert). As explained in Erickson, "attorneys must use their common sense to avoid conduct which could appear to be an improper attempt to influence a witness who is about to testify." Erickson, 87 F.3d at 303.

Defendants rely primarily on Erickson, 87 F.3d 298. Defs.' Mot. at 3:13-4:25. Erickson was a products liability action in which the defendant's counsel hired the plaintiff's expert Dr. Grimm to work on a different case being handled by defense counsel. The Ninth Circuit held that defense counsel's conduct "entirely circumvented the discovery rules because Combs achieved unsupervised access to plaintiff's expert." Id. at 302. In addition, the court held that defense counsel's actions were prejudicial. In fact, due to the prejudicial effect on plaintiff's ability to present his case, "Erickson believed he could no longer use Dr. Grimm because [plaintiff] did not know what had transpired during the meeting between Combs and Dr. Grimm." Id.

Erickson is distinguishable from the instant case. Unlike the defense counsel in Erickson, Campbell was unaware that Dr. Ballard had been retained by Orkin at the time of their conversation. Campbell Decl. ¶¶ 9, 12; Ballard Decl. ¶ 6. In addition, whereas the attorney and expert in Erickson consummated a professional relationship, Campbell and Dr. Ballard's discussion did not nor did they ever go beyond an initial discussion of a possible relationship. Importantly, unlike Erickson, Orkin has not shown any prejudice as a result of Campbell and Dr. Ballard's brief discussion. To the contrary, Orkin asserts that it "hope[s] this contact will not have an influential impact on Dr. Ballard's testimony…" Defs.' Mot. at 4:10-

1  25.  Such speculation does not satisfy the "heavy burden" imposed on Orkin in seeking
2  disqualification.
3       Given the circumstances presented, the Court is not persuaded that Campbell violated
4  his ethical obligations under Rule 26.  But even if he had, Orkin has failed to demonstrate any
5  prejudice as a result of his conduct. As such, the Court finds that the harsh sanction of
6  disqualification is unwarranted.  See Abubakar v. County of Solano, 2008 WL 336727 *6 (E.D.
7  Cal., February 4, 2008) ("given that [the attorney's] communication was obviously inadvertent,
8  and that no confidential information was disclosed during this contact, the harsh penalty of
9  disqualification would not be appropriate."); Baugh, 137 Cal.App.4th at 744 (disqualification
10 improper absent showing of continuing effect of violation).

     **2.**     **Solicitation**

11
12       Orkin's second contention regarding Plaintiffs' counsel's allegedly unethical behavior is
13  that *the Hoffman firm* improperly solicited Plaintiffs through an "advertisement" posted in The
14  Catholic Voice.  Rule 1-400(D) of the California Rules of Professional Conduct states that "a
15  communication or solicitation (as defined herein) shall not … fail to indicate clearly, expressly,
16  or by context, that it is a communication or solicitation."  Rule 1-400(A) defines
17  "communication" as "any message or offer made by or on behalf of a member concerning the
18  availability for professional employment of a member or a law firm … including … [a]ny
19  advertisement (regardless of medium) of such member or law firm directed to the general
20  public or any substantial portion thereof."  Orkin also cites Standard 12 of Rule 1-400, which
21  states that the advertisement must "state the name of the member responsible for the
22  communication," and "[w]hen the communication is made on behalf of a law firm, the
23  communication shall state the name of at least one member responsible for it."
24       A threshold issue addressed by neither party is the fact that the alleged notice at issue
25  was placed by the Hoffman firm, but the motion seeks to disqualify Campbell Law P.C. only.
26  Since Orkin bears a "heavy burden" in seeking disqualification, it is incumbent upon Orkin to
27  establish that the conduct of *the Hoffman firm* may be considered in a motion to disqualify its
28

1  co-counsel, Campbell Law P.C.  On this ground alone, Orkin's motion fails.[3]  That
2  notwithstanding, Orkin has not demonstrated that the notice in the newsletter violated any
3  ethical rules.
4        First, Orkin claims that the notice fails to indicate that it is an "advertisement."  Defs.'
5  Mot. at 5:26.  The copy of the notice provided by Orkin (attached as Exhibit A to the
6  Declaration of Mark Eisenhut) is barely legible, so it is not possible to decipher the content of
7  the notice—and neither party recites the text of the notice in their papers.  Without the ability
8  to consider the precise language presented in the notice, the Court is unable to assess whether
9  the language "expressly" or "in context" discloses that it is an advertisement.  That
10 notwithstanding, what little text is legible supports the conclusion that that there was no Rule
11 1-400 violation.  The notice appears to simply announce that termite customers "may be the
12 victim of fraud," and then appears to direct them to contact a law firm for more information.
13 Eisenhut Decl. Ex. A.
14       Second, Orkin claims that the notice fails to identify the attorney responsible for placing
15 the advertisement, pursuant to Standard 12 of Rule 1-400.  Defs.' Mot. at 5:27-28.  However,
16 this assertion is unpersuasive, since the notice indicates that it was placed by the firm Hoffman
17 & Lazear.  Eisenhut Decl. Ex. A.[4]  At the time the notice was placed, the Hoffman firm's name
18 included two of the three attorneys in the firm.  Pls.' Opp'n at 11:4.  If anyone were to respond
19 to the notice, and asked to speak with either Mr. Hoffman or Mr. Lazear, that person would
20 very likely be placed in contact with one of the attorneys knowledgeable about the subject
21 matter of the instant case.  Defendants suggest that the notice was deficient because it did not
22 identify a "specific lawyer" responsible for the advertisement.  Defs.' Mot. at 5:27.  Orkin

---

[3] According to Orkin, the notice was published "as early as February 5, 2007." Def.'s Mot. at 5:20. The Court notes that Orkin waited over two years to raise this as a ground for disqualification, and Orkin has failed to offer any reasonable explanation for the delay. See Zador Corp. v. Kwan, 31 Cal.App.4th 1285, 1302 (1995) (disqualification should not be ordered where movant fails to explain unreasonable delay in bringing motion for disqualification).

[4] While the notice is largely illegible, the Hoffman firm's name is somewhat legible on the copy of the notice provided.

1  attempts to distinguish between a law firm (which may have individual last names as part of
2  the firm's name) and the individual attorneys who are employees of such firm.  Defs.' Reply at
3  7:27-8:2.  However, Orkin, which bears the burden on this motion, fails to cite any authority to
4  support this contention.  As such, the Court is not persuaded by Defendants' contention on this
5  claim.
6       Finally, Orkin asserts that Plaintiffs violated Rule 1-400 because the notice failed "to
7  disclose whether the client will be liable for costs."  Defs.' Mot. at 6:1-2.  Defendants rely on
8  Standard 14, which describes a form of communication in violation of Rule 1-400:  "a
9  'communication' which states or implies 'no fee without recovery' unless such communication
10 also expressly discloses whether or not the client will be liable for costs."  Orkin alleges that
11 consistent with Standard 14, Plaintiffs' counsel should have indicated whether the potential
12 client would be liable for costs.  However, Standard 14 only applies and requires such
13 disclosure *if* the communication "states or implies 'no fee without recovery.'"  Orkin fails to
14 point to any language in the notice that makes any reference to fees or any statement akin to
15 "no fee without recovery."  Accordingly, the Court finds that there is an insufficient basis upon
16 which to find that the Hoffman firm's notice violates Rule 1-400.
17      In sum, the Court finds that the Hoffman firm did not violate any ethical responsibilities
18 when it placed the advertisement in the monthly newsletter.  That notwithstanding, even if the
19 notice were improper, Orkin fails to present any authority to show that the conduct of the
20 Hoffman firm can be attributed to Campbell Law P.C.  The Court finds that Orkin has failed to
21 demonstrate that a violation of  Rule 1-400.
22      **3.**     **<u>Contacting Current Employee</u>**
23      Orkin's third and final contention regarding Campbell's allegedly unethical behavior is
24 that Campell engaged in *ex parte* communication with a current Rollins employee.  This third
25 argument appears for the first time in a separate, supplemental memorandum filed almost two
26 months after the moving papers were filed.  As Plaintiffs correctly point out, the supplemental
27 brief is improper.  The only memoranda or briefs that are permitted by the Local Rules are (1) a
28 notice of motion combined with memorandum in support of the motion, (2) a memorandum in

opposition to the motion and (3) a reply brief or memorandum. (Local Rule 7-2(b)(4), 7-3(a), 7-3(c)). The Rules do not permit multiple moving papers, replies or additional briefs, other than those three briefs. A party may seek to file a supplemental memorandum under Local Rule 7-3(d), but such a memorandum can consist only of a citation to new authority and may not contain argument. As such, Orkin's supplemental brief is improper and is not properly before this Court.[5]

Even considering the substance of the supplemental brief, the Court finds that Orkins' arguments uncompelling. Rule 2-100(A) of the California Rules of Professional Conduct states: "[w]hile representing a client, a member shall not communicate directly or indirectly about the subject of the representation with a party the member *knows* to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer." (Emphasis added). Rule 2-100(B) defines a "party" as including (1) an officer, director, or managing agent of a corporation, or (2) an employee of a corporation "if the subject of the communication is any act or omission of such person in connection with the matter which may be binding upon or imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization."

Importantly, an attorney does not violate Rule 2-100(A) unless he or she *actually knows* the contacted party is represented by counsel. Truitt v. Superior Court, 59 Cal.App.4th 1183, 1188 (1997) ("'The proscription against ex parte contact [applies] only where counsel "knows" the other person is represented by counsel.' … It does not apply where the attorney does not actually "know" but merely "should have known" that the opposing party was represented'."); see also Snider v. Superior Court, 113 Cal.App.4th 1187, 1215 (2003) ("[w]e agree … that a bright line rule is necessary because attorneys should not be at risk of disciplinary action for

---

[5] The Court notes that Plaintiffs do not object to the Court's consideration of the supplemental memorandum, but instead argue that Orkin should not be allowed to file a "second" reply brief because the supplemental memorandum constituted their reply. Pls.' Opp'n at 13. While the filing of a supplemental brief is not authorized by the Local Rules, the notion that the supplemental brief should be construed as Orkin's reply is illogical. A reply is a response to an opposition. Since Plaintiffs had not yet filed their opposition, the supplemental brief was not in response to anything.

1  violating rule 2-100 because they should have known that an opposing party was represented or
2  would be represented at some time in the future") (internal quotations omitted).  Moreover,
3  constructive knowledge is insufficient.

4      Orkin attempts to use Campbell's email to Tharpe as grounds for disqualification.
5  However, as noted above, a violation of an ethical rule does not support automatic
6  disqualification.  Baugh, 137 Cal.App.4th at 744.  "Disqualification is only justified where the
7  misconduct will have a 'continuing effect' on judicial proceedings."  Id.  Yet, Orkin does not
8  claim that Campbell's email to Tharpe—to which Tharpe never responded—had any
9  continuing or prejudicial effect on this action.  Furthermore, Orkins fails to cite a single case
10 where the disqualification of counsel was upheld based on an inadvertent violation of Rule 2-
11 100 where no information was conveyed by the employee to opposing counsel.

12     Furthermore, Campbell has presented evidence, which is undisputed by Orkin, that
13 Campbell contacted Tharpe *without knowing* Tharpe was a current Rollins employee.
14 Campbell Decl. ¶ 14.  However, under Truitt and Snider, an attorney does not violate Rule 2-
15 100(A) of the California Rules of Professional Conduct unless the attorney has *actual*
16 *knowledge* that the other person is represented by counsel.  In fact, constructive knowledge is
17 insufficient. As such, Campbell has not violated Rule 2-100 because Campbell did not have
18 actual knowledge that Tharpe was a current Rollins employee.  The Court finds that Campbell
19 did not violate his ethical duties by inadvertently contacting Tharpe, and that the email sent to
20 Tharpe had no effect on the proceedings or otherwise prejudice Orkin.

21     **B.**    **Request for Attorneys' Fees**
22     In the conclusion of its moving papers, Orkin requests that the Court "order that
23 Plaintiffs' counsel be required to pay the expenses and fees" for work incurred "investigating
24 the issues raised" in the instant motion.  Defs.' Mot. at 8:6-8.  Given the Court's rejection of
25 Orkin's arguments, Orkin's request for fees is moot.

26
27
28

IV.     CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT Defendants' Motion to Disqualify Counsel (Docket 172) is DENIED in its entirety.

IT IS SO ORDERED.

Dated: November 19, 2009

_____
SA
Uni

IT IS SO ORDERED
Judge Saundra B. Armstrong